# United States Court of Appeals

## For the First Circuit

No. 03-2227

BRADLEY J. DONAHUE,

Plaintiff, Appellant,

v.

CITY OF BOSTON, THE BOSTON POLICE DEPARTMENT,
AND PAUL F. EVANS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY
AS COMMISSIONER OF THE BOSTON POLICE DEPARTMENT,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Lisi,* District Judge.

Michael C. McLaughlin for appellant.
Rory Fitzpatrick, with whom Irene C. Freidel, Wendy A.
Berliner, and Kirkpatrick & Lockhart LLP, and William V. Hoch,
Office of the Legal Advisor of the Boston Police Department, were
on brief for appellees.

June 8, 2004

*Of the District of Rhode Island, sitting by designation.

**LIPEZ**, **Circuit Judge**.    This equal protection case is before us for the second time.  See Donahue v. City of Boston, 304 F.3d 110 (1st Cir. 2002) (Donahue I).  Appellant Bradley Donahue sued the City of Boston, the Boston Police Department (BPD), and various public officials, alleging that the hiring practices of the BPD, which are governed by a federal court consent decree, violate the Constitution's guarantee of equal protection.  The district court found that Donahue lacked standing to pursue his suit and entered summary judgment in favor of the defendants.  On appeal, we affirmed the decision below as to Donahue's claim for damages but remanded to the district court for a determination as to whether Donahue had standing to pursue his claim for prospective relief.

On remand, after further proceedings, the district court held that when Donahue last took the qualifying civil service exam in April 2001, he was no longer eligible for hire to the BPD due to the age restriction of thirty-two for certification for original appointment to a police officer position imposed by Mass. Gen. Laws ch. 31, § 58A.  Finding that the statute was valid, constitutional, and applicable to Donahue, the court concluded that Donahue was not able and ready to apply to the BPD and therefore lacked standing to pursue his claim for prospective relief.  We affirm.

**I.**

The facts of this case are laid out in detail in Donahue I.  We briefly review those facts that are relevant to the present

-2-

appeal, recounting them in the light most favorable to Donahue. Landrau-Romero v. Banco Popular de P.R., 212 F.3d 607, 611 (1st Cir. 2000).

To become a police officer with the BPD, an individual must first pass a statewide civil service examination, which is administered by the Commonwealth of Massachusetts Human Resources Division (HRD). The BPD's hiring procedures are governed in part by a consent decree that was entered in 1973. See Castro v. Beecher, 365 F. Supp. 655, 661-62 (D. Mass. 1973). After the HRD administers the exam, it compiles an "eligible list" of individuals who received a passing score on the examination and who therefore are eligible for appointment to a civil service position. In accord with the terms of the consent decree, HRD alternates minority and non-minority candidates on the eligible list. The candidates included on the eligible list are divided into residents and non-residents of Boston, with residents ranked higher than similarly situated non-residents, subject to the alternation requirement of the consent decree. Among the residents, certain candidates are entitled to a statutory preference and are ranked higher than those without a preference, again subject to the consent decree requirement. When hiring a new class of police officers, the BPD notifies the HRD of the number of positions it wishes to fill. HRD then certifies twice the number of persons requested plus one, selecting names from the eligible list in rank

order.  The BPD must appoint candidates in order of their position on the certification list, unless it provides a reason for bypassing a candidate.[1]

Bradley Donahue, a white male, is a police officer for the Town of Yarmouth, Massachusetts.  Prior to his employment in Yarmouth, he was employed by the University of Massachusetts police.  Neither of these positions required Donahue to take an entrance exam.

However, Donahue aspired to become a police officer with the BPD and sought appointment by taking the HRD civil service examination.  Because he did not qualify for a statutory hiring preference, he could only be appointed from the general certification list according to his score on the examination and subject to the consent decree.  He took the civil service exam in April 1997 and May 1999, receiving passing scores of 92 and 96 respectively.  On each occasion, he was placed on the eligible list but was not hired by the BPD.  He filed this lawsuit on May 10, 2000, alleging that the BPD's procedures and appointments following the two civil service tests discriminated against him on the basis of race, in violation of the United States Constitution and 42

---

[1] Special certification lists may be created of individuals who qualify for a statutory hiring preference based on their ability to speak particular languages.  In addition, the BPD may go outside of the general certification list to appoint police cadets, former recruit officers from a previous class, and former members of the BPD who retired due to disability and are seeking reinstatement. Donahue is not eligible for appointment through any of these alternative hiring routes.

U.S.C. §§ 1981 and 1983.  See Donahue v. City of Boston, 183 F. Supp. 2d 202 (D. Mass. 2001).[2]  In March 2001, Donahue sought, and was granted, permission to amend his complaint to include additional allegations relating to the BPD's hiring of police officers from the eligibility lists created from the 1999 exam.

On April 26, 2001, while his case was pending in the district court, Donahue again sat for the statewide civil service exam, passing with a score of 100.  However, one year earlier, the Massachusetts Legislature had adopted a statute providing that in any municipality adopting the law, no person who has reached the age of thirty-two on the date of the entrance examination shall be eligible to have his or her name certified for "original appointment" to a municipal police officer position.  2000 Mass. Acts ch. 242 (codified at Mass. Gen. Laws. ch. 31, § 58A) (§ 58A).  Boston adopted the provisions of § 58A in December 2000.  Donahue had reached the age of thirty-two by the date of the April 2001 examination. Hence, his name was not included on the certification list that the HRD forwarded to the BPD on September 14, 2001.

On November 28, 2001, the Boston City Council passed a home rule petition to exempt from § 58A any Boston resident who took the April 2001 civil service examination for appointment to

---

[2] Donahue also advanced claims under 42 U.S.C. §§ 1985 and 1986 against certain state officials based on their alleged failure to comply with his public records requests.  The district court granted summary judgment on those counts in favor of the state defendants, and we affirmed on appeal.

the BPD until his or her eligibility expired. Several months earlier, the City Council had passed a similar home rule petition exempting from the statute applicants to the Boston Fire Department who, unlike the police officer candidates, took the 2000 civil service exam that was held prior to the enactment of § 58A. That petition had been approved by the Mayor of Boston and enacted by the Massachusetts Legislature, as is required for such a petition to become law. See Mass. Const. Amend. Art. 2, § 8. However, because the Mayor of Boston did not approve the home rule petition as to police officer candidates, it was never presented to or enacted by the Legislature. Therefore, no candidates for appointment to the BPD were exempted from § 58A.

Meanwhile, on May 30, 2001, the defendants moved for summary judgment on the ground that Donahue lacked constitutional standing to assert the claims alleged in his complaint. On September 13, 2001, Donahue filed a cross-motion for summary judgment, claiming that the consent decree was unconstitutional based on the uncontested facts. In their opposition to Donahue's motion, filed on October 29, 2001, the defendants argued in part that Donahue lacked standing to seek prospective relief because he was ineligible for appointment to the BPD under § 58A. Two days later, Donahue moved for leave to amend his complaint to challenge the validity, applicability, and constitutionality of § 58A.

On December 13, 2001, the district court granted summary judgment in favor of the defendants, finding that Donahue lacked

standing to pursue his claim. It held, in particular, that Donahue's test scores were such that he would not have been hired, even in the absence of the consent decree: "Donahue's test scores and lack of statutory preference doomed his candidacy to failure before the consent decree came into play." Therefore, the district court concluded that Donahue had not suffered any injury and had no standing to challenge the constitutionality of the consent decree. On December 14, the district court entered orders denying Donahue's motion for summary judgment and his Motion to Amend the First Amended Complaint on the ground that they were now moot. Donahue timely appealed.

In Donahue I, we affirmed the district court's holding that Donahue lacked standing to pursue his claim for damages, explaining that more than 580 non-minority applicants had scored higher than Donahue on the April 1997 exam but were not hired, while the eligible list created after the 1999 exam included 117 non-minority candidates between Donahue and the last non-minority appointee. Given his placement on the eligible lists, we concluded that Donahue would not have been hired by the BPD even under a race-neutral policy. Because Donahue would not have qualified for hiring in the absence of the consent decree, he lacked the causation and injury-in-fact required to establish standing to assert a claim for damages. See Donahue I, 304 F.3d at 116-19.

We explained, however, that a plaintiff may have standing to assert an equal protection claim for prospective relief, even if

he or she does not have standing to pursue a claim for damages. Where a plaintiff challenges an on-going race conscious program and seeks prospective relief in the form of an injunction and a declaratory judgment, "the relevant injury . . . is the 'inability to compete on equal footing.'" Id. at 119 (quoting Texas v. Lesage, 528 U.S. 18, 21 (1999)). Thus, a plaintiff may have standing to pursue a claim for prospective relief if he or she "has or is likely to be exposed to unequal treatment." Id. (citation and internal quotation marks omitted). In Donahue's case, at least one minority candidate without special language skills or a statutory preference was hired despite a lower score than Donahue's on the May 1999 exam. Therefore, Donahue was not able to compete on an equal footing with other candidates because of his race, a key element of standing to seek forward-looking relief. Id. at 119-20.

However, we cautioned that unequal treatment was not enough. A plaintiff seeking to establish standing to pursue a claim for prospective relief "must also be able to show that he is 'able and ready' to apply for the benefit and that the challenged 'discriminatory policy prevents [him] from doing so.'" Id. at 119. (quoting Northeastern Fla. Chapter Assoc. of Gen. Contractors v. City of Jacksonville, 508 U.S. 656, 666 (1993)). The appellees argued that Donahue was not able and ready to apply for a future appointment to the BPD because he was over thirty-two years old and was thus ineligible for an original appointment under the terms of

§ 58A. Donahue countered that § 58A was no longer in effect and did not apply to him because, as a Yarmouth police officer, he was not seeking an original appointment. Noting that the parties had not provided sufficient factual and legal support for their positions to enable us to assess the effect of § 58A on Donahue's standing to bring suit, we remanded the case to the district court for further consideration of Donahue's equal protection claim for prospective relief. We also directed the district court to reevaluate Donahue's Motion to Amend the First Amended Complaint, which, in light of our ruling, was no longer moot.

On December 10, 2002, the district court held a status conference to address the mandate from this court. At the end of the conference, the court issued an order allowing Donahue's October 2001 Motion to Amend the First Amended Complaint and allowing the defendant subsequently to file a motion for summary judgment "on the issues of the constitutionality and applicability of [§ 58A]."

Donahue filed his Second Amended Complaint on December 30, 2002. In addition to challenging the validity and application of § 58A, as proposed in Donahue's Motion to Amend the First Amended Complaint, the Second Amended Complaint included new claims of age and race discrimination under 42 U.S.C. §§ 1983, 1985, and 1986; Mass. Gen. Law ch. 151B, and ch. 31; Title VII; and the United States and Massachusetts Constitutions.

-9-

The City subsequently moved for summary judgment and/or to dismiss all of the claims in Donahue's Second Amended Complaint. Donahue filed a cross-motion for summary judgment. On June 4, 2003, the district court granted summary judgment for the City, holding that there was "no evidence that § 58A (1) is no longer in effect; (2) does not apply to [Donahue]; or (3) is unconstitutional." Because § 58A prevented Donahue from being appointed to the BPD on account of his age, Donahue was not "able and ready" to compete for a position in the BPD and therefore lacked standing to pursue his claim for prospective relief. The district court declined to address the additional claims that Donahue had added to his Second Amended Complaint, explaining that "[a]lthough the parties make a number of arguments in their briefs, this court believes that § 58A's effect on Donahue's candidacy is the only remaining issue in this case." This appeal followed.

## II.

We review de novo the district court's entry of summary judgment for the defendants, evaluating the record in the light most favorable to Donahue. <u>Suarez</u> v. <u>Pueblo Intern., Inc.</u>, 229 F.3d 49, 53 (1st Cir. 2000). Donahue claims that the district court erred in concluding that he lacks standing to assert an equal protection claim seeking prospective relief. In addition, he argues that the district court erroneously failed to address the

-10-

new counts that Donahue added to his Second Amended Complaint. We address each of these claims in turn.

## A.        Standing to Assert Claim for Prospective Relief

Donahue challenges the district court's conclusion that § 58A prevents him from being appointed to the BPD, thereby depriving him of standing to seek prospective relief in the form of an injunction against the operation of the consent decree.[3]  It appears that Donahue has abandoned on appeal his earlier claims that § 58A is no longer in effect and does not apply to him because he is not seeking an original appointment with the BPD.  Rather, he argues that § 58A should not apply to him because he was entitled to be hired based on the results of the 1999 examination.  He also claims that the district court erred by upholding the constitutionality of § 58A under a rational basis test rather than applying strict scrutiny.  Both of these arguments are unpersuasive.

---

[3] The relevant prospective remedy for Donahue's alleged inability to compete on an equal footing under the consent decree is "an injunction against the operation of the consent decree." Donahue I, 304 F.3d at 121.  It is not, as Donahue variously suggests, the remedy of a court order appointing Donahue to the BPD or an injunction against the operation of § 58A.

### 1. Applicability of § 58A

Frankly, we have found it difficult to understand the precise nature of Donahue's claim that § 58A does not deprive him of standing to seek prospective relief. Essentially, he seems to claim that § 58A should not be applied to him because he was entitled to be hired to the BPD based on the results of the 1999 examination. He argues in his brief that he "took the qualifying exam in 1999 and scored high enough <u>at that time</u> that he would have been hired but for his race." Therefore "[i]t was <u>only</u> because of the Consent Decree that [Donahue] . . . was forced to take the 2001 exam, and [was] treated disparately under 58A." (emphasis in original).

This argument relies on an erroneous reading of <u>Donahue I.</u> As we emphasized in that opinion, Donahue would not have been hired in 1999 in the absence of the consent decree. Approximately 120 non-minority applicants scored higher than Donahue on the 1999 test but were also denied appointment to the BPD. All of those candidates would have been eligible for appointment before Donahue. As we explained, irrespective of the consent decree, "Donahue was too far down the list to be even remotely considered for hiring" to the BPD based on his 1999 test score. <u>See</u> <u>Donahue I</u>, 304 F.3d at 117. Therefore, Donahue was not entitled to an appointment prior to the enactment of § 58A and would have been subject to the

statute's age restrictions in April 2001 even under a race-neutral hiring policy.

We found in Donahue I that Donahue was denied the opportunity to compete on equal footing in the BPD's hiring process on account of his race in connection with the 1999 exam. Id. at 120. However, unequal treatment is not itself sufficient to establish standing to seek prospective relief; Donahue must also be able to demonstrate that he is "able and ready" to apply for a position with the BPD and is prevented from doing so by the challenged discriminatory policy, that is, the operation of the consent decree. Id. at 119 (quoting Jacksonville, 508 U.S. at 666); see also Gratz v. Bollinger, 539 U.S. 244, 284 (2003) ("To seek forward-looking, injunctive relief, petitioners must show that they face an imminent threat of future injury."); O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."). Because of § 58A's age limitation, Donahue was not able and ready to apply for appointment to the BPD in December 2001 when the district court issued its original opinion in this case, nor is he eligible for such an

appointment today. Thus, Donahue does not satisfy a key element of standing to seek prospective relief.[4]

## 2.    Constitutionality of § 58A

Donahue further claims, however, that the district court erred in upholding the constitutionality of § 58A under the Equal Protection Clause of the Fourteenth Amendment on the ground that its age classification is rationally related to a legitimate public purpose. Donahue argues that § 58A is subject to strict scrutiny rather than rational basis analysis because the statute has a disproportionate impact on non-minorities, which, coupled with other relevant facts, demonstrates that the statute has "an invidious discriminatory purpose." Washington v. Davis, 426 U.S. 229, 242 (1976) (although a statute is not unconstitutional solely because it has a racially disproportionate impact, "an invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if true, that the law bears more heavily on one race than on another"); see also Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 265 (1977) (racially disproportionate impact does not constitute a violation

---

[4] We note that this case is not a class action, which may sometimes proceed even if the named plaintiff's claim has become moot during the pendency of the litigation. See Gratz, 539 U.S. at 286 n.5 ("[I]f a named class representative has standing at the time a suit is initiated, class actions may proceed in some instances following the mootness of the named class representative's claim.").

of the Equal Protection Clause absent "[p]roof of racially discriminatory intent or purpose").

More specifically, Donahue argues that minorities who scored at least a 95 on the 1999 exam were hired prior to the enactment of § 58A and are not affected by the statute's age limitation. Therefore, he asserts that "Section 58A as applied to the Donahue Similarly Situated Class is so inextricably bound to the Consent Decree as to amount to an extension of its application: but for the Consent Decree, the non-minority members of the Donahue Similarly Situated Class would not come under the purview of § 58A, because they would have received original appointments before they turned 32."[5] In other words, Donahue claims that § 58A has a disproportionate impact on non-minorities who took the 1999 exam and scored between a 95 and the lowest score of a hired non-minority. That disproportionate effect, he suggests, gives rise to an inference of purposeful racial discrimination.[6]

---

[5] In his reply brief, Donahue explains that in referring to a "Donahue Similarly Situated Class," he does not seek to construe this case as a class action but rather to indicate the similarly situated group of individuals among whom the application of § 58A has a racially disproportionate impact.

[6] Donahue variously asserts that in <u>Quinn</u> v. <u>City of Boston</u>, 325 F.3d 18 (1st Cir. 2003), we applied strict scrutiny to a statute that had a racially disproportionate impact, thereby establishing that "any statute that results in a race-based outcome must survive strict scrutiny." This argument misconstrues <u>Quinn</u>, which applied heightened scrutiny to "a judicial decree affording race-based relief," not a race-neutral statute that had an allegedly racially disproportionate impact. <u>Id.</u> at 28.

We agree with the district court that strict scrutiny is not required. Section 58A has an identical effect on minorities and non-minorities competing for an original position with the BPD. Anyone who has reached the age of thirty-two on the day of the applicable civil service exam is precluded from seeking an original appointment, regardless of his or her race. If some minorities were no longer seeking an original appointment at the time of the April 2001 exam because they had already been hired by the BPD, this was in no way a consequence of § 58A. Therefore, § 58A's age restriction does not have a disproportionate impact on non-minorities.

Assuming arguendo that Donahue presented adequate grounds for concluding that § 58A had a racially disproportionate impact, there is no evidence that the Massachusetts Legislature, in enacting the statute, was motivated by a racially discriminatory intent against non-minorities. Because Donahue has not shown that the statute's distinction between older and younger candidates evinces purposeful discrimination on the basis of race, strict scrutiny does not apply to our review of § 58A, notwithstanding any racially disproportionate effect.

Unlike race, age is not a suspect classification under the Fourteenth Amendment's Equal Protection Clause. Therefore, "[s]tates may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is

-16-

rationally related to a legitimate state interest." Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 83 (2000). In addition, a state may rely on age as a proxy for other characteristics relevant to a state's legitimate interests, even if that reliance turns out to be misplaced. See id. at 84. A court will not overturn an age classification so long as the state articulates some "reasonably conceivable state of facts that could provide a rational basis for the classification." FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993). Those facts need not be supported by the evidentiary record, Kittery Motorcyle, Inc. v. Rowe, 320 F.3d 42, 47 (1st Cir. 2003), as "any 'plausible' justification will suffice, and effectively ends the analysis," Starlight Sugar, Inc. v. Soto, 253 F.3d 137, 145 (1st Cir. 2001) (quoting Beach, 508 U.S. at 313-14). Under this forgiving standard, the party challenging the constitutionality of the age classification bears the burden of "negat[ing] any conceivable basis which might support it." Beach, 508 U.S. at 315 (citation and internal quotation marks omitted).

Donahue has not met his burden of establishing that § 58A is not rationally related to a legitimate state interest. Edward P. Callahan, Director of Human Resources for the BPD, stated in his sworn affidavit that the BPD supported the City's adoption of § 58A because the age limitation encouraged a long-term commitment to the BPD, ensured the physical fitness of its officers, and reduced strain on the BPD's pension system. On appeal, Donahue does not

attempt to discredit the legitimacy of these rationales for § 58A's age classification.  Indeed, while insisting that the statute must be evaluated under a strict scrutiny standard, he concedes that the "purported 'rational basis' for the age discrimination contained in § 58A by the City, even if proffered by the correct legislative body (which it was not),[7] would meet . . . the minimal standards of rational basis."  Notwithstanding Donahue's claim to the contrary, it does not matter whether the City Council actually relied on the reasons offered by Callahan in adopting § 58A.  See Beach, 508 U.S. at 315 ("[B]ecause we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.").  As Donahue appears to recognize, those reasons evince a legitimate public purpose that is rationally related to § 58A's age restriction.  Hence, we agree with the district court that § 58A passes constitutional scrutiny.  Because Donahue is not eligible for appointment to the BPD on account of his age, he does not have standing to obtain injunctive relief to prevent the operation of the consent decree.

---

[7]In other words, Donahue argues that "the justification for § 58A can only be enunciated by the legislative body promulgating or implementing the statute," not by Edward Callahan or the BPD.

-18-

**B.      Additional Claims Advanced in Donahue's Second Amended Complaint**

Donahue argues that the district court erred by refusing to consider various claims advanced in his Second Amended Complaint, including claims for relief pursuant to 42 U.S.C. §§ 1983, 1985, and 1986; Mass. Gen. Law ch. 151B, and ch. 31; Title VII; the United States and Massachusetts Constitutions, and the doctrine of equitable estoppel.  The defendants respond that the court appropriately declined to address these claims because they appeared for the first time in Donahue's Second Amended Complaint without the permission of the court.

Donahue claims that our holding in Donahue I made clear that Donahue was entitled to amend his complaint to include a broad range of additional counts.  This argument mischaracterizes the scope of our remand order.  In Donahue I, we remanded the case to the district court to consider whether § 58A obviated Donahue's standing to seek prospective relief in the form of an injunction against the federal consent decree.  We also directed the district court to reconsider Donahue's Motion to Amend the First Amended Complaint, noting that the decision to allow or disallow such an amendment was "well within the district court's discretion." Donahue I, 304 F.3d at 121; see also O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 154 (1st Cir. 2004) ("We review the denial of a motion to amend the pleadings for an abuse of discretion and will affirm if any adequate reason for the denial is apparent from the

-19-

record."). Although we observed that Donahue might have advanced a claim under Title VII, we certainly did not require the district court sua sponte to consider, let alone to allow, the addition of that or other new claims that were not raised in a motion to amend. Rather, we simply noted that, in light of our remand, the district court could no longer deny Donahue's motion to amend on mootness grounds. Therefore, we directed the district court to determine – in its discretion – whether Donahue's "proposed amendments" were appropriate. Notably, Donahue's proposed amendments did not include the new claims that Donahue now seeks to advance.

After the service of responsive pleadings, a party may amend his or her complaint "only by leave of the court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). Yet, on remand, Donahue never moved the district court to add new claims beyond those raised in his earlier motion to amend. Moreover, at the status conference held by the district court to address the scope of this case on remand, Donahue's counsel never mentioned Title VII, ch. 151B, or the other counts that later appeared in Donahue's Second Amended Complaint. Nor did he object when the attorney for the defendants framed the issues on remand as: 1) whether § 58A is still in force in the City of Boston; 2) whether it applies to Donahue; and 3) whether it is constitutional. Rather, he agreed to file an amended complaint that would provide the basis for addressing those specific issues. The district

court's order issued at the conclusion of the status conference allowed Donahue's Motion to Amend the First Amended Complaint so described; it did not invite the addition of any other claims that might occur to the plaintiff.  Finally, in its opinion granting summary judgment for the defendants, the district court expressly declined to consider the new claims purportedly advanced in the Second Amended Complaint, noting that "[a]lthough the parties make a number of arguments in their briefs, this court believes that § 58A's effect on Donahue's candidacy is the only remaining issue in the case."

In short, the district court did not abuse its considerable discretion in declining to expand the scope of this case beyond the issues presented on remand and raised in Donahue's previous motion to amend, particularly as Donahue never sought the district court's leave to add those new claims prior to the filing of his Second Amended Complaint.[8]  See, e.g., Wagner v. Daewoo

---

[8] Although Donahue's Motion to Amend the First Amended Complaint vaguely alluded to "alleged retaliatory aspects of the Defendants' actions against the Plaintiff" and separately mentioned "additional Counts under the provisions of 42 U.S.C. § 1983," those vague references did not come close to presenting the comprehensive § 1983 retaliation claim that appeared for the first time in Donahue's Second Amended Complaint.  Moreover, Donahue filed his motion to amend in October 2001, about a month before the Mayor of Boston allegedly retaliated against Donahue by refusing to sign the home rule petition passed by the City Council.  That refusal is the core of Donahue's retaliation count in his Second Amended Complaint.  Therefore, the district court did not grant Donahue leave to include the § 1983 retaliation claim in his Second Amended Complaint when he allowed the motion to amend.

<u>Heavy Indus. Am. Corp.</u>, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").

## III.

The defendants request that we dismiss with prejudice the claims included in Donahue's Second Amended Complaint that were never properly presented to or considered by the district court. They further ask us to find Donahue's appeal frivolous and sanction him pursuant to Fed. R. App. P. 38. Those requests are denied. However, for the reasons stated herein, the decision of the district court is **<u>affirmed</u>**.

**<u>So ordered.</u>**