**Carmelo CORREA–RUIZ, et al., Plaintiffs**

v.

**Hon. Sila Maria CALDERON–SERRA, et al., Defendants.**

**Civil No. 04–1775(SEC).**

United States District Court, D. Puerto Rico.

Nov. 21, 2005.

Ariel Hernandez–Santana, Jesus M. Hernandez–Sanchez, Ramon Gonzalez–Santiago, Hernandez Sanchez Law Firm, San Juan, PR, for Plaintiffs.

Carlos Del–Valle–Cruz, Jo–Ann Estades–Boyer, Esther Crespin–Credi, Department of Justice, Commonwealth of Puerto Rico, Ismael Rodriguez–Izquierdo, Ismael Rodriguez Izquierdo Law Office,

Michael C. McCall, Michael Craig McCall Law Office, San Juan, PR, Jorge Martinez–Luciano, Pedro Ortiz Alvarez Law Offices, Ponce, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, Senior District Judge.

Pending before the Court is Co-defendants the Commonwealth of Puerto Rico's, the Police Department of Puerto Rico's and Víctor Rivera González's motion to dismiss (Docket # 27) and Co-defendant Calderón's motion joining Co-defendants' motion to dismiss (Docket # 33). Plaintiffs opposed Co-defendants' motion (Docket # 35) and Defendants replied (Docket # 42). After carefully considering the parties' filings and the applicable law, for the reasons set herein, Defendants' motion to dismiss will be **GRANTED** in part, **DENIED** in part.

### Factual Background

Plaintiffs are former police officers who were involuntarily retired from the Police Department of the Commonwealth of Puerto Rico pursuant to Law 181 of August 15, 2003, 3 P.R. Laws Ann. § 766g, herein "Law 181". Said law orders members of the Puerto Rico Police and Firefighters' Corps to retire after attaining the age of fifty-five (55) years and completing thirty (30) years of service creditable to the Employees' Retirement System. *Id.*

Defendants are the Commonwealth of Puerto Rico, the Police Department of Puerto Rico (the "Police Department"), the former Governor of Puerto Rico, Sila M. Calderón, and the former Superintendents of the Police Department, Víctor M. González and Agustín Cartagena. The Commonwealth of Puerto Rico is sued under *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), for prospective relief. Co-defendants Calderón, Rivera, and Cartagena are sued in their personal

and official capacities. Plaintiffs specifically allege that Co-defendants Calderón and Rivera agreed to "get rid of a group of old timers" within the Police Department and replace them with younger officers (Docket # 35, ¶ 7).

Plaintiffs filed the present action averring that Law 181 is contrary to the Age Discrimination in Employment Act, 29 U.S.C.A § 621 *et seq.* (herein ADEA), and the Equal Protection and Due Process clauses of the Fourteenth Amendment of the United States Constitution. Plaintiffs have also pled a cause of action under Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141.[1] Plaintiffs requested that the Court: (1) declare Law 181 unconstitutional because it violates the Equal Protection Clause, (2) enjoin Defendants from applying Law 181, (3) declare that Plaintiffs were entitled to due process before being terminated in their jobs, and (4) order individual Defendants to pay compensatory and punitive damages (Docket # 37).

### Standard of Review

Under Rule 12(b)(6) in assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Davis v. Monroe County Bd. of Ed.,* 526 U.S. 629,

119 S.Ct. 1661, 1676, 143 L.Ed.2d 839 (1999). *See also Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir. 1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory").

But "[a]lthough this standard is diaphanous, it is not a virtual mirage." *Berner v. Delahanty,* 129 F.3d 20, 25 (1st Cir.1997) *citing Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Id.* In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle,* 142 F.3d at 508 (*quoting Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996)). *See also Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir.1999). Courts, moreover, "will not accept a complainant's unsupported conclusions or interpretations of law." *Wash. Legal Found. v. Mass. Bar Found.,* 993 F.2d 962, 971 (1st Cir. 1993). "[I]t is enough for a plaintiff to sketch an actionable claim by means of a generalized statement of facts from which the defendant will be able to frame a responsive pleading." *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 73 (1st Cir.2000) (*quoting Garita Hotel Ltd. Partnership v. Ponce Fed. Bank,* 958 F.2d 15, 17 (1st Cir.1992) (internal quotation. marks omitted)). In so doing, "a plaintiff can make allegations *either* on the basis of

---

1. As to the latter claim, supplemental jurisdiction is invoked, and the former police officers are joined by their wives and families as Plaintiffs.

personal knowledge or on 'information and belief.'" *Id.*

### Applicable Law and Analysis

Co-defendants the Commonwealth of Puerto Rico, the Police Department, González, and Calderón have moved to dismiss the complaint alleging that: (1) the Eleventh Amendment of the United States Constitution renders the Commonwealth and the individual Defendants, in their official capacity, immune from suit for money damages under ADEA, (2) there is no individual liability under ADEA, (3) the Complaint fails to state ADEA, Section 1983, Due Process, or Equal Protection claims, (4) Defendants in their individual capacities are entitled to qualified immunity, (5) neither declaratory judgement nor injunctive relief are warranted, and (6) this Court should decline to exercise supplemental jurisdiction over the claims arising under the laws of the Commonwealth of Puerto Rico (Docket # 27).

### I. Eleventh Amendment Immunity

■ In their motion to dismiss, Co-defendants aver that the Commonwealth, the Police Department and the individual defendants in their official capacity cannot be held liable for money damages under ADEA or Section 1983. They ground their argument in the Eleventh Amendment and in the U.S. Supreme Court's decision in *Kimel v. Florida Board of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). The Eleventh Amendment provides that the Judicial power of the United States does not extend to any suit in law or equity against a State by a citizen of another State or by foreign citizens. U.S. Const. amend. XI. As explained in *Kimel,* however, the U.S. Supreme Court has interpreted the Amendment as also barring suits against a State by its own citizens. *Id* at 72–73, 120 S.Ct. 631. Thus, "the Constitution does not provide for federal jurisdiction over

suits against nonconsenting States." *Id.* That rule also applies to Puerto Rico, as it has been consistently held that the Commonwealth of Puerto Rico enjoys Eleventh Amendment immunity. *See, Maysonet–Robles v. Cabrero,* 323 F.3d 43, 48 n. 3 (1st Cir.2003), *Jusino Mercado v. Commonwealth of Puerto Rico,* 214 F.3d 34, 39 (1st Cir.2000), *Ortiz–Feliciano v. Toledo–Davila,* 175 F.3d 37, 39 (1st Cir.1999). Moreover, the immunity afforded by the Eleventh Amendment also protects an entity that is an arm of the state and government officials sued in that capacity when the action is essentially one for the recovery of money from the State. *Maysonet–Robles,* 323 F.3d at 48–49 (1st Cir., 2003), *Wojcik v. Mass. State Lottery Comm'n,* 300 F.3d 92, 99 (1st Cir.2002).

■ However, the U.S. Supreme Court has also recognized that Congress may validly abrogate states' Eleventh Amendment immunity when "it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Board of Trustees of University of Alabama v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (quoting *Kimel* ). In *Kimel,* the U.S. Supreme Court was faced with the question of whether the ADEA was a valid abrogation of the states' Eleventh Amendment Immunity. The Court found that Congress had unambiguously expressed its intention to abrogate such immunity. *Id* at 78. Nonetheless, the Court also determined that because the ADEA was not valid legislation under § 5 of the Fourteenth Amendment—from which Congress's authority to abrogate Eleventh Amendment immunity stems—it could not abrogate the States' sovereign immunity. *Id* at 80, 91. Thus, the Eleventh Amendment shields the states and Puerto Rico against suits filed by its citizens, or those

of another state, for money damages under ADEA.

In their opposition to the motion to dismiss, Plaintiffs concede that states cannot be held liable for monetary damages under the ADEA provisions (Docket # 35 at p. 12). They also fail to counter Co-defendants' postures regarding the applicability of the Eleventh Amendment to the Commonwealth, the Police Department as an arm of the state, and the individual Co-defendants, in their official capacity. Rather, Plaintiffs contend that *Kimel* does not disallow equitable relief against public officials under Section 1983 and that on point case law notwithstanding, this Court should apply *Tennessee v. Lane*, 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), to the instant action because Plaintiffs were denied due process before their termination (Docket # 35 at pp. 12–13).

Plaintiffs' request for equitable relief will be addressed elsewhere in this Opinion. However, Plaintiffs' argument regarding *Tennessee v. Lane* misconceives the holding of that case. In *Tennessee*, the U.S. Supreme Court held that "Title II [of the Americans with Disabilities Act], as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment." *Id.* at 533–534, 124 S.Ct. 1978. As to those cases, therefore, the states do not enjoy Eleventh Amendment immunity. The present case is not brought under Title II of the Americans with Disabilities Act, nor does it implicate the right of access to the courts. Therefore, *Tennessee v. Lane* is not applicable to the case at bar.

For the foregoing reasons, Plaintiffs' monetary claims against the Commonwealth, the Police Department, and the individual Co-defendants in their official capacity under ADEA and Section 1983 will be **DISMISSED WITH PREJUDICE.**

## II. ADEA

### 1. Individual liability

█ Co-defendants also argue that Plaintiffs' suit against individual Co-defendants in their personal capacities for violations of ADEA should be dismissed. To that end, Co-defendants cite cases from this district holding that "there is no individual liability under ADEA and that only the employer is liable for the acts of its agents". *Rodriguez v. Puerto Rico Marine Management, Inc.*, 975 F.Supp. 115, 120 (D.P.R.1997). *See also, Vizcarrondo v. Bd. of Trustees*, 139 F.Supp.2d 198, 205 (D.P.R.2001), *Moreno v. John Crane*, 963 F.Supp. 72, 76–77 (D.P.R.1997).

Plaintiffs offer no argument to counter Co-defendants' position on this point. The Court agrees with Co-defendants that there is no individual liability under ADEA and therefore Plaintiffs' ADEA claims against moving Co-defendants in their personal capacities will be **DISMISSED WITH PREJUDICE.**

### 2. Age Discrimination

The fact that the Commonwealth, the Police Department, and the individual Co-defendants in their official capacities are not liable for money damages, or that Co-defendants are not liable in their individual capacities, does not automatically dispose of Plaintiffs' ADEA claim. "Neither *Kimel*, nor Eleventh Amendment jurisprudence, prevents individuals [. . .] from obtaining injunctive relief against a state based upon ADEA pursuant to *Ex Parte Young*." *State Police for Automatic Ret. Ass'n v. DiFava*, 317 F.3d 6, 14 (1st Cir. 2003). Nonetheless, Co-defendants contend that Plaintiffs have failed to allege an actionable ADEA claim, and therefore that claim should be dismissed in its entirety.

To that end, Co-defendants argue that the mandatory retirement of police officers ordered by Law 181 is permissible under § 623(j) of ADEA. They find further support for their argument in *Drnek v. City of Chicago*, 192 F.Supp.2d 835 (N.D.Ill.2002) and *Minch v. City of Chicago*, 363 F.3d 615 (7th Cir., 2004).

Plaintiffs argue, however, that dismissal of the ADEA claim is not proper because: (1) Law 181 violates the ADEA since no tests of physical and mental fitness were administered prior to the mandatory retirement, (2) the Commonwealth had to abide by the bona fide occupational qualification standard under § 623f(1) if it wanted to lawfully enforce a mandatory retirement age, and (3) Law 181 is a subterfuge to evade the purposes of the ADEA provisions (Docket # 35). For the reasons stated below, the Court finds no merit in Plaintiffs' arguments.

■ Although pursuant to the ADEA, it is generally unlawful for an employer to discharge an individual because of his or her age, 29 U.S.C.A. § 623(a), firefighters and law enforcement officers are governed by a particular section which provides a limited exception to the general rule. 29 U.S.C.A. § 623(j). Section 623(j), in its pertinent part, allows a State or one of its political subdivisions or instrumentalities to discharge a law enforcement officer because of his or her age when: (1) that law enforcement officer has reached the higher of the age of retirement provided for in a state or local law enacted after September 30, 1996 or age 55, and (2) the discharge is done "pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter". *Id.*[2] Law 181, passed in the year 2003, imposes upon members of the Police Department and Firefighter Corps mandatory retirement upon reaching the age of fifty-five (55) and completing thirty (30) years of service creditable to the Employees' Retirement Fund. Inasmuch as the age of retirement provided for in Law 181 is fifty-five years of age, it is consistent with Section 623(j).

■ Nonetheless, Plaintiffs argue that Defendants did not comply with Section 623(j) because they did not provide Plaintiffs with an opportunity to take tests that allows them to demonstrate physical and mental ability. (Docket # 35, pp. 6–10). Plaintiffs are referring to tests that the Secretary of Health and Human Services should have developed in order for law enforcement and firefighting officials to demonstrate their capacity to continue on the job past the applicable retirement age. *See,* Public Law 104–208, 1996 HR 3610.

**2.** In its entirety, 29 U.S.C.A. § 623(j) reads as follows:
It shall not be unlawful for an employer which is a State, a political subdivision of a State, an agency or instrumentality of a State or a political subdivision of a State, or an interstate agency to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken—
(1) with respect to the employment of an individual as a firefighter or as a law enforcement officer, the employer has complied with section 3(d)(2) of the Age Discrimination in Employment Amendments of 1996 if the individual was discharged after the date described in such section, and the individual has attained—

(A) the age of hiring or retirement, respectively, in effect under applicable State or local law on March 3, 1983; or
(b)(I) if the individual was not hired, the age of hiring in effect on the date of such failure or refusal to hire under applicable State or local law enacted after September 30, 1996, and the individual was discharged, the higher of—
(I) the age of retirement in effect on the date of such discharge under such law; and
(II) age 55; and
(2) pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter.

The Secretary was to issue these tests and accompanying regulations after study and consultation, and within four years of the approval of the Age Discrimination in Employment Amendments of 1996. Once the Secretary issued the regulations, employers who wished to take advantage of Section 623(j) would have to afford police and firefighters that had reached the retirement age an opportunity to take the tests so they could demonstrate their physical and mental fitness. *Id.* However, the Secretary never did approve any guidelines and regulations, nor were the pertinent tests ever developed. *See Drnek*, 192 F.Supp.2d at 839.

Although Plaintiffs recognize that obstacle, they insist on the necessity of the administration of tests that allow law enforcement officers to prove their fitness prior to, and as a way to avoid, mandatory retirement. Plaintiffs, however, cite no case law that supports this proposition. *Co-defendants*, on the other hand, argue that they could not provide the tests because the Secretary never developed or identified them. To that end, they turn to *Drnek*, which states that:

> The provision in § 623(j)(1) for compliance with § 3(d)(2) [of the 1996 Age Discrimination in Employment Amendments, relating to the development and issuance of tests] merely imposed an obligation on employers to provide tests when and if suitable tests became available; it did not make tests a condition precedent to the operation of the exemption. *Id.* at 842.

It follows that because the Secretary "did not promulgate the regulations called for by the statute," the Commonwealth "could not violate § 623(j)(1) by failing to provide fitness tests before enforcing" the mandatory retirement age for police officers. *Id.*

The Court agrees with the reasoning set forth in *Drnek* and relied on by Co-defendants. Since the Secretary of Health and Human Services did not develop the tests nor issue the regulations, the Commonwealth of Puerto Rico could not administer the first nor abide by the second. Accordingly, the mandatory retirement of Puerto Rico police officers pursuant to Law 181, without prior testing, cannot be construed as a violation of Section 623(j).

Plaintiffs further argue that their ADEA claim should not be dismissed because the mandatory retirement was not based on a bona fide occupational qualification. Plaintiffs' reference to Section 623(f)(1) is misguided. Co-defendants' motion to dismiss is predicated on Section 623(j)(1), which specifically applies to law enforcement and firefighting officials. Pursuant to Section 623(j)(1), Defendants had no need to identify a bona fide occupational qualification prior to enforcing a mandatory retirement age. The fact that the Secretary of Health and Human Services did not issue tests and regulations for use by employers who wished to take advantage of Section 623(j)(1) cannot oblige employers to comply with the more stringent standard of Section 623(f)(1). The Secretary's lack of action regarding tests and qualifications does not abolish Section 623(j)(1), it merely renders its reference to said tests meaningless, *see Drnek*, 192 F.Supp.2d at 842 and *Minch*, 363 F.3d at 620.

██ Plaintiffs' final argument is that the mandatory retirement age for police officers established in Law 181 is a subterfuge to avoid the purposes of the ADEA. Plaintiffs' theory is that Defendants, particularly Calderón and Rivera González, agreed to get rid of a group of older police officers in order to replace them with younger officers. Plaintiffs thus call into question the motivation of at least some of the Co-defendants with regards to the mandatory retirement of police officers. The fact that Co-defendants acted with discriminatory motives, which at this junc-

ture we must take as true, does not, however, defeat Co-defendants' motion to dismiss the ADEA claim. Let us explain.

The 7th Circuit, in *Minch v. City of Chicago,* considered whether the presence of illicit motives in the approval and implementation of a mandatory retirement age for police officers is enough to assert a viable claim that the pertinent statute or ordinance is a subterfuge to avoid the purposes of the ADEA. 363 F.3d at 617. The court reasoned that the claim had to be dismissed because Defendants' requirement that police officers retire at a certain age, regardless of any discriminatory bias, could not be a subterfuge to avoid the purposes of the ADEA when that statute expressly allows state and local governments to provide for the mandatory retirement of police officers at a certain age, so long as they do so in a manner consistent with Section 623(j). *Id.* at 628–629, 363 F.3d 615. "The statute does not condition the validity of such retirement programs on proof that the public employer has adopted the program genuinely believing that it is justified in the interest of public safety." *Id.* The Court added: "defendants cannot be liable for their *motives* if their *conduct* has not evaded the ADEA prohibitions [. . .], and doing something that the statute expressly permits does not evade its prohibitions" (citations omitted). *Id.* at 629.

The Supreme Court and the First Circuit have yet to address this particular issue. However, we find *Minch* persuasive and on point. Here, as in *Minch,* Defendants have acted in a way specifically allowed by the ADEA. That some of them may have done so with discriminatory animus does not turn Law 181 into a subterfuge, a scheme, to avoid complying with the ADEA. *See, Id.* at 624. Under the theory advanced by Plaintiffs, there could be no way to establish that Law 181

serves as an instrument to evade the purposes of the ADEA.

One last point must be briefly discussed prior to disposing of this claim. In their Eighth Amended Complaint, Plaintiffs also aver that Defendants did not act pursuant to a bona fide retirement plan (Docket # 37 ¶ 15). That lone assertion, however, is unaccompanied by any factual account that may provide support to said conclusion. Thus, Plaintiffs have failed to properly allege this matter.

Consequently, for the reasons stated above, Co-defendants' request for dismissal of Plaintiffs' ADEA claims is **GRANTED** and Plaintiffs' ADEA claims will be **DISMISSED WITH PREJUDICE.**

### III. Section 1983

Section 1983 confers no substantive rights, but rather provides a venue for vindicating federal rights elsewhere conferred. *See Graham v. M.S. Connor,* 490 U.S. 386, 393–394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). A viable section 1983 claim requires that Plaintiffs show that "(1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or the laws of the United States." *Johnson v. Mahoney,* 424 F.3d 83, 89 (1st Cir.2005) (citations omitted). Here, Plaintiffs do not have an actionable Section 1983 claim because their underlying substantive claims, based on the Due Process and Equal Protection clauses, cannot prosper.

#### 1. Due Process Clause

Co-defendants argue that Plaintiffs have failed to state a deprivation of their property rights without due process of law (Docket # 27, pp. 19–21). Plaintiffs' response is limited to stating that they had a property interest in their continued employment as police officers until the age of

sixty-five, the retirement age previously established under Law 447 of May 15, 1951, and that they were therefore entitled to a hearing prior to being mandatorily retired (Docket # 35, p. 11).

Plaintiffs' argument implicitly accepts that there is no constitutionally protected property interest in their police jobs after the age of retirement. Their challenge is thus not directed at the lack of due process, but at the fact that the retirement age was changed from sixty-five to fifty-five years of age. However, even if Plaintiffs could establish a property interest in their employment that would nevertheless expire in ten years, their Due Process claim would not prosper because a state need not provide a hearing to each retiree subject to mandatory retirement. *See, Johnson v. Lefkowitz*, 566 F.2d 866, 869 (2nd Cir.1977).

Therefore, Plaintiffs' Due Process claims will be **DISMISSED WITH PREJUDICE.**

### 2. Equal Protection Clause

Co-defendants also contend that Plaintiffs' Equal Protection claim should be dismissed for failure to state a claim. For the reasons set forth below, the Court agrees.

As in *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), this Court is faced with an Equal Protection challenge to a law that need only meet the rationality test. There, as here, a police officer who had been forced into retirement because of his age claimed that the state's mandatory retirement law denied him his constitutional right to equal protection under the laws. The U.S. Supreme Court held that rational review was proper because there is no fundamental right to governmental employment and the class of uniformed police officers over fifty is not suspect for Equal Protection purposes. *Id.* at 313, 96 S.Ct. 2562. Thereaf-

ter, the U.S. Supreme Court found that the state statute ordering retirement of police officers at age fifty did not violate the Equal Protection clause because the legislature's purpose had been to protect the public by assuring physical preparedness of its uniformed police and mandatory retirement at age fifty served that purpose because physical ability generally declines with age. *Id.* at 314–315.

Even though Plaintiffs are clearly aware of the Court's holding in *Murgia,* and therefore concede that Law 181 is subject to the more relaxed rationality test, they insist that it violates the Equal Protection clause. Plaintiffs bear a very heavy burden, as a court will not overturn an age classification so long as there is a plausible justification for said classification. *Donahue v. City of Boston* 371 F.3d 7, 15 (1st Cir.2004) (citations omitted). Under this forgiving standard, the party challenging the constitutionality of the age classification bears the burden of 'negating any **conceivable basis** which might support it.' *Id.* at 15–16 (emphasis added). "When there are no fundamental rights or suspect criteria involved, legislative classifications will be overturned only if no grounds can be conceived which will justify the classification." *Piepenburg v. Cutler,* 649 F.2d 783, 787 (10th Cir.1981).

Plaintiffs advance three arguments in support of their contention that Law 181 violates the Equal Protection clause: (1) Law 181 is irrational because it allows police officers who have reached the age of fifty-five but who have not completed their thirty years of service to remain on the force, (2) before leaving office, Co-defendant Calderón allegedly ordered that the retired police officers be recruited once again in order to counter the rise in criminality, and (3) some well-know individuals have been productive in their fields past the age of fifty-five (Docket # 35 at 14–15).

As to Plaintiffs' first argument, it should be pointed out that in *Murgia,* as here, some retirements would be delayed past the retirement age until the expiration of the required years of service. *Murgia,* 427 U.S. at 308 n. 1, 96 S.Ct. 2562. That is, some people over the "retirement age" (50 years in *Murgia* and 55 here) would stay on the force, despite their age, because they had yet to complete their required years of service. This slight variation in Law 181's treatment of police officers over fifty-five is not so "unrelated to the achievement of any combination of purposes that [the court is forced to] conclude that the legislature's actions were irrational". *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). To that end, the Court notes that Law 181 amended Puerto Rico's general statute regarding the retirement of government employees, and that pursuant to that statute, government retirees' pensions are calculated at least partly on the basis of the years of service that the retired employees have completed. *See* 3 P.R. Laws Ann. § 761 *et seq.* It is conceivable that Law 181's requirement that police officers subject to mandatory retirement be both fifty-five years of age and have rendered thirty years of service further the state's purposes of having fit police officers and ensuring that its employees reap the utmost benefits from their retirement pensions.

As to Plaintiffs' second argument, regarding Co-defendant Calderón's alleged order, it is consistent with Law 181, which allowed for the retention of mandatorily retired police officers in the Police Reserves for a period of up to two years. In such cases, the police officers would need the authorization of the Police Superintendent to temporarily remain on the force. These case-by-case exceptions do not render the statute irrational, nor do they rise up to a violation of the Equal Protection clause. *See, Johnson v. Lefkowitz,* 566 F.2d 866, 869 (2nd Cir., 1977).

Finally, Plaintiffs' third argument is devoid of any merit. That there have been Presidents, governors or other public figures who have reached office or had accomplishments after sixty, is of little relevance to the issue at hand. Accordingly, Plaintiffs' Equal Protection claims will be **DISMISSED WITH PREJUDICE.**

### IV. Supplemental law claims

Having dismissed Plaintiffs' federal law claims against the moving Co-defendants, we will similarly dismiss Plaintiffs' Commonwealth law claims against them. *See, Newman v. Burgin,* 930 F.2d 955, 963 (1st Cir.1991) ("[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit."). Plaintiffs' supplemental law claims will be **DISMISSED WITHOUT PREJUDICE.**

### V. Co-defendant Cartagena

Inasmuch as Co-defendant Cartagena did not move for dismissal, Plaintiffs' Eighth Amended Complaint is not dismissed in its entirety. However, given this Court's resolution of the issues of law enumerated above, Plaintiffs are hereby **ORDERED TO SHOW CAUSE by November 28, 2005,** why the Eighth Amended Complaint should not also be dismissed against Co-defendant Cartagena. Failure to comply with this order will result in the dismissal of all of Plaintiffs' claims against Co-defendant Cartagena.

### Conclusion

For the reasons set herein, Co-defendants' motion requesting dismissal of Plaintiffs' Eighth Amended Complaint is **GRANTED in part and DENIED in part.** Plaintiffs' federal law claims against Co-defendants the Commonwealth of Puerto Rico, the Police Department, González and Calderón are **DISMISSED WITH PREJ-**

UDICE and Plaintiffs' supplemental law claims against the afore-mentioned are **DISMISSED WITHOUT PREJUDICE.** Judgement shall be entered accordingly.

**SO ORDERED.**