# United States Court of Appeals
## For the First Circuit

No. 16-1959

PAUL M. MCDONOUGH,

Plaintiff, Appellant,

v.

CITY OF PORTLAND; NON-RESERVED TAXI GROUP, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Thompson, Stahl, and Barron,
Circuit Judges.

John S. Whitman, with Heidi J. Hart and Richardson, Whitman, Large & Badger, for appellant.
Edward R. Benjamin, Jr., with Adrianne E. Fouts and Drummond Woodsum, for appellee City of Portland.
Sigmund D. Schutz, with Preti, Flaherty, Beliveau & Pachios, LLP, for appellee Non-Reserved Taxi Group.

May 1, 2017

BARRON, **Circuit Judge**.  This case concerns a suit by Paul M. McDonough, in which he challenges the system by which the City of Portland ("Portland") distributes permits for taxis to pick up passengers at the Portland International Jetport. McDonough alleges that Portland, in violation of the federal Constitution, denied him the opportunity to apply for a permit on the basis of his race and national origin.  The District Court granted summary judgment to Portland, because it ruled that McDonough did not have standing to bring his constitutional challenge.  We affirm.

McDonough filed his complaint in Maine Superior Court on December 30, 2014.  Portland removed the suit to the United States District Court for the District of Maine on April 24, 2015.  Non-Reserved Taxi Group then intervened in the action.  After some discovery, all parties filed motions for summary judgment on March 21, 2016.

The summary judgment record shows that McDonough was asked in his deposition whether he would be able and willing to apply for the permit and to pay the $800 application fee if Portland removed the cap on the number of permits, as McDonough sought in his complaint.  McDonough answered: "To spend the $800? That's a very, very, very -- that's a very accurate thing.  I probably -- I probably wouldn't be -- I'd want to go there, but it's all relative.  I wouldn't be as inclined to go there now with

the -- you're talking about if the same number of cabs were allowed there or are we talking about when we used to go there for 12 cabs? See, I don't know."  The attorney taking his deposition clarified that her question was about whether "everything is the same except you can now apply for a permit."  McDonough replied: "Geez, I don't know.  Well, the other thing that I got to keep in mind now, I'm old and I don't know how much longer I'm going to be doing this. . . . It's mostly principle.  I know that's a foregone word these days.  Some people don't even know what I mean when I mention that."

After the deposition, McDonough submitted, in a sworn statement, an errata sheet that contained a series of corrections to his deposition testimony, presumably pursuant to Rule 30(e) of the Federal Rules of Civil Procedure.  He corrected the above statement to the following: "I am 71 years old, I've driven a cab for 47 years, and I don't know how much longer I'm going to be doing this.  If I am physically able to continue working over 50 hours a week, and to change my hours to match when the planes arrive, then I would definitely pay the $800 [fee] for a . . . permit."

McDonough does not dispute that, to have standing to bring this challenge, he must show that he is "able and ready" to apply for a permit.  Donahue v. City of Boston, 371 F.3d 7, 14 (1st Cir. 2014).  He also does not dispute that, to meet his burden

of showing that he is "able and ready" to apply for a permit, he must show "a likelihood that he will compete for the governmental benefit in question in the future." Cotter v. City of Boston, 323 F.3d 160, 167 (1st Cir. 2003).

Applying that "likelihood" standard, the District Court accepted the errata sheet, notwithstanding the defendants' objection that it should be disregarded under the "sham affidavit" doctrine. But, the District Court concluded that, even crediting McDonough's corrected statement from the errata sheet, McDonough had not met his burden of demonstrating a genuine dispute of fact regarding whether there was a likelihood that McDonough was ready and able to apply for the permit. The District Court explained that the corrected statement set forth in the errata sheet revealed McDonough's own uncertainty regarding whether he would be physically able to work fifty hours a week and to change his working hours to match when planes arrive.

On appeal, McDonough contends that the District Court erred because the statement from the errata sheet sufficed to create a genuine issue of material fact regarding the likelihood that he would seek the permit. But, after reviewing the District Court's decision de novo, see Donahue, 371 F.3d at 13, we disagree. The corrected statement in the errata sheet at most indicates that there is a possibility -- not a likelihood -- that McDonough will be able and ready to apply for the permit that he contends he is

- 4 -

being unlawfully denied the opportunity to seek.  Accordingly, we see no basis for reversing the ruling of the District Court.

Nor do the precedents on which McDonough relies support a different conclusion. In U.S. AirWaves, Inc. v. FCC, 232 F.3d 227 (D.C. Cir. 2000), the plaintiff was a bidder for a license, and contended that the agency set unlawful rules for the auction. In ruling that the plaintiff did have standing, the D.C. Circuit explained that, to show that a prospective applicant is "ready, willing, and able" to seek a benefit and has standing to challenge an allegedly impermissible legal restriction on the opportunity to seek it, the applicant does not need to show that it would participate "regardless of the circumstances then prevailing." Id. at 232 (citing Orange Park Florida T.V., Inc. v. FCC, 811 F.2d 664, 672 & n.18 (D.C. Cir. 1987)).  But, the D.C. Circuit did not suggest that a plaintiff could establish standing merely by showing that it was possible that the plaintiff might seek the benefit going forward, which is all that McDonough has shown.  Rather, in U.S. AirWaves, the plaintiff had submitted a bid in the first auction, and affirmed in a sworn affidavit submitted by its chief executive that it "intended" -- without qualification -- to bid in a future auction and was able to raise the capital necessary to do so.  232 F.3d at 232.

McDonough's reliance on Turner v. Fouche, 396 U.S. 346 (1970), Regents of the Univ. of Cal. v. Bakke, 438 U.S. 265 (1978),

Clements v. Fashing, 457 U.S. 957 (1982), and Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656 (1993), is equally misplaced. Those cases simply hold that, when a plaintiff challenges a discriminatory process by which some state benefit is distributed, the plaintiff need not prove that he would actually be successful in obtaining that benefit if he applied, whether that benefit is a public office, a seat in a medical school, or a contract for work. See Ne. Fla. Chapter of Associated Gen. Contractors of Am., 508 U.S. at 666. These cases do not support the conclusion that a plaintiff can establish standing merely by asserting that, while he might apply for the benefit he contends he is being unlawfully barred from seeking, he would do so only if he could make changes in his working conditions that the summary judgment record provides no basis for concluding that it is likely he would make.

Finally, McDonough states in his brief on appeal that he was "mistaken" in stating in the errata sheet that he would apply for a permit only if he was able to change his working hours. He points out that the record shows that some of his current working hours currently match some of the times that planes already land at the airport. He contends in his brief that the record thus shows that there is no need for him to change his hours in order for him to apply for the permit.

- 6 -

The record does show some level of overlap between his current working hours and the landing times. The fact remains, however, that McDonough's own statement in the errata sheet avers that he would apply for a permit only if he could change his working hours. And McDonough nowhere represents, either in that errata sheet or elsewhere in the record, that he would not need to change his working hours if there were the degree of overlap that currently exists between his working hours and the landing times. Thus, his attempt on appeal to in effect revise his already once-revised statement regarding his intentions cannot suffice to create the genuine issue of material fact that, on this record, is missing.

The judgment of the District Court is **affirmed.**