# United States Court of Appeals
## For the First Circuit

---

No. 05-1797

MARIA RAMOS-PIÑERO, ET AL.,

Plaintiffs, Appellants,

v.

COMMONWEALTH OF PUERTO RICO, ET AL.,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpi, U.S. Magistrate Judge]

---

Before

Selya and Lipez, Circuit Judges,
and Saylor,* District Judge.

---

Nicolas Nogueras-Cartagena on brief for appellants.
Salvador J. Antonnetti-Stutts, Solicitor General; Mariana Negrón-Vargas, Deputy Solicitor General; Maite D. Oronoz Rodríguez, Deputy Solicitor General; and Leticia Casalduc-Rabell, Assistant Solicitor General, on brief for appellees Commonwealth of Puerto Rico and Department of Transportation and Public Works.
Francisco J. Amundaray on brief for appellee Municipality of San Juan.
Luis G. Martinez Llorens on brief for appellee Pep Boys - Manny, Moe & Jack of Puerto Rico, Inc.

---

June 30, 2006

---

_____
* Of the District of Massachusetts, sitting by designation.

**Saylor, District Judge**. This appeal arises out of the tragic death of a fourteen-year-old boy who fell into an open manhole. The plaintiffs, mostly relatives of the boy, sought damages from various governmental and private defendants under 42 U.S.C. § 1983 and state tort law.[1] The district court dismissed the federal law claims on grounds of Eleventh Amendment immunity and for failure to state a claim, and declined to exercise its jurisdiction over the state law claims. Because we find that (1) the Commonwealth of Puerto Rico ("Commonwealth") and the Commonwealth Department of Transportation and Public Works (referred to in the pleadings by its Spanish-language acronym "DTOP") did not waive their Eleventh Amendment immunity from suit and (2) plaintiffs' claims against the remaining governmental defendants do not rise to the level of a federal constitutional violation, we affirm the dismissal.

## I. BACKGROUND

Because the district court disposed of this case on motions to dismiss, we assume the truth of the facts set forth in the amended complaint. See Redondo-Borges v. U.S. Dep't. of Housing and Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005).

---

[1] For all relevant purposes in this opinion, Puerto Rico is treated as a state. See, e.g., Soto v. Flores, 103 F.3d 1056, 1064 (1st Cir. 1997) (provisions of section 1983 concerning actions "under color of state law" applicable to Puerto Rico); Arecibo Cmty. Health Care, Inc. v. Puerto Rico, 270 F.3d 17, 21 n.3 (1st Cir. 2001) (Puerto Rico enjoys immunity from suit to the same extent as any state under the Eleventh Amendment).

-2-

In the fall of 2003, Antonio Luis Ruiz Ramos was a student at the Llana Middle School in Río Piedras, Puerto Rico. On October 31, 2003, he left school around 1:40 p.m., after classes ended for the day. It was raining heavily, and much of 65th Infantry Avenue (a nearby street) and its surrounding sidewalks were flooded by the time Antonio Luis began his walk home.

Antonio Luis was walking with a classmate, Ishell Marie Dávila Villalobos. The two decided to cross 65th Infantry Avenue and wait out the rain on the balcony of a nearby business known as "El Caporal." After some period of time, Antonio Luis jumped off the balcony onto what he thought was solid ground.

Unknown to Antonio Luis, an open manhole had been obscured by the flood waters. He fell through the opening and into the rushing waters of a drainage pipe. The current propelled him underground back across 65th Infantry Avenue, and through land on which an auto-parts store owned by defendant Pep Boys - Manny, Moe & Jack of Puerto Rico, Inc. ("Pep Boys") is located. The water carried him to a surface drainage outlet, but discarded tires and auto parts obstructed the opening and he was trapped.

Rescuers eventually arrived, but the blockage slowed their efforts to locate Antonio Luis and provide medical assistance. He suffered multiple wounds to his head and body and drowned.

According to the complaint, various defendants were aware that the manhole lacked a cover, that a school was nearby, and that

-3-

the area of 65th Infantry Avenue where the events occurred often flooded.

Antonio Luis's mother and other persons commenced a civil action in the United States District Court for the District of Puerto Rico on April 22, 2004.  The complaint asserted claims for damages under 42 U.S.C. § 1983 and state tort law.  Specifically, it alleged a violation of Antonio Luis's rights under the Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution by six defendants:  (1) the Commonwealth; (2) DTOP; (3) the municipal government of San Juan, Puerto Rico ("Municipality"); (4) the Puerto Rico Aqueduct and Sewer Authority (PRASA); (5) Ondeo de Puerto Rico, Inc. ("Ondeo")[2], a private company operating under a service contract with PRASA; and (6) the Puerto Rico Highway Authority ("PRHA").  Plaintiffs also asserted state-law  claims against all of the above defendants, along with Pep Boys and three unnamed insurance companies.

The Commonwealth and DTOP moved to dismiss on jurisdictional grounds, asserting immunity under the Eleventh Amendment of the United States Constitution.  The Municipality moved to dismiss contending, inter alia, that plaintiffs failed to

---

[2] The district court appears to have assumed that Ondeo was to be treated as a state actor.  The parties do not challenge that assumption on appeal, and because it is immaterial to our ultimate conclusion, we do not address it.

-4-

state a claim upon which relief could be granted under Fed. R. Civ. P. 12(b)(6).[3]

Proceeding in several stages, the district court dismissed the entire matter.[4] On March 2, 2005, the court dismissed the claims against the Commonwealth and DTOP on the basis of Eleventh Amendment immunity. Later, the court dismissed the section 1983 claims against the Municipality pursuant to Rule 12(b)(6), on the ground that the Municipality's conduct failed to amount to a constitutional violation. The court then dismissed the claims against PHRA and Pep Boys on grounds similar to those of the Municipality and dismissed sua sponte the remaining claims against PRASA and Ondeo based on the same reasoning. With no federal claims remaining, the district court declined to exercise supplemental jurisdiction over the state law claims. The court denied plaintiffs' motion for reconsideration. This appeal ensued.

## II. DISCUSSION

### A. Standard of Review

The district court dismissed the section 1983 counts against the Commonwealth and DTOP on jurisdictional grounds,

---

[3] No federal claims were stated against Pep Boys or the three unnamed insurance companies. Pep Boys moved to dismiss, contending that because plaintiffs failed to state a federal cause of action, the district court should decline supplemental jurisdiction over the state tort claims against Pep Boys.

[4] The matter was referred for all purposes to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

finding plaintiffs' claims barred by the Eleventh Amendment. The section 1983 claims against the remaining governmental defendants and Ondeo were dismissed under Rule 12(b)(6) for failure to state a claim.

In both instances, we review the lower court's dismissal order de novo, accepting the plaintiffs' well-pleaded facts as true and indulging all reasonable inferences therefrom. See, e.g., Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005) (Rule 12(b)(6)); Arecibo Cmty. Health Care, Inc. v. Puerto Rico, 270 F.3d 17, 22 (1st Cir. 2001) (Eleventh Amendment immunity). We are not bound by the reasoning of the district court, and may affirm an order of dismissal on any basis made apparent by the record. See Otero v. P.R. Indus. Comm'n, 441 F.3d 18, 20 (1st Cir. 2006).

## B.  **Eleventh Amendment Immunity**

The Eleventh Amendment, as construed by the Supreme Court, bars a citizen from bringing an action in federal court against his or her own state. See Bd. of Tr. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001); see also Maysonet-Robles v. Cabrero, 323 F.3d 43, 48 (1st Cir. 2003) (citing Hans v. Louisiana, 134 U.S. 1, 10 (1890)). A state, however, can waive its Eleventh Amendment immunity in three ways: "(1) by a clear declaration that it intends to submit itself to the jurisdiction of a federal court or administrative proceeding; (2) by consent to or participation in a federal program for which waiver of immunity is an express

-6-

condition; or (3) by affirmative conduct in litigation." New Hampshire v. Ramsey, 366 F.3d 1, 15 (1st Cir. 2004) (citations omitted).

Plaintiffs here claim waiver by affirmative conduct in litigation. Essentially, they contend that: the complaint alleged three specific grounds of waiver of immunity[5]; that the Commonwealth and DTOP responded to the complaint with a motion to dismiss (on grounds of Eleventh Amendment immunity) that did not deny those allegations with sufficient specificity; and that defendants' purported failure to do so itself constituted a waiver.

Plaintiffs' theory is manifestly incorrect, if not entirely frivolous. If litigation conduct is to constitute a

---

[5] Specifically, plaintiffs contend that the Commonwealth waived immunity by (1) accepting federal funds under the Hazard Elimination Program, 23 U.S.C. § 152, and the Highway Safety Act of 1966, 23 U.S.C. §§ 401-11; (2) consenting to liability for injuries caused by state negligence in maintaining its highways and sewers under Article 404 of the Puerto Rico Political Code of 1902; and (3) failing to demonstrate that DTOP was an "arm of the state" and thus entitled to immunity under the Eleventh Amendment.

While plaintiffs do not argue on appeal that their purported waiver grounds are substantively correct, we note the following. First, the mere receipt of federal funds does not constitute a waiver of immunity. See Edelman v. Jordan, 415 U.S. 651, 673-74 (1974). Second, for a state statute to constitute a waiver of Eleventh Amendment immunity, "it must specify the State's intention to subject itself to suit in federal court." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985) (emphasis in original). Neither consent to be sued in state court nor a general waiver of sovereign immunity is sufficient. See, e.g., Fla. Dep't of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n, 450 U.S. 147, 149-50 (1981) (consent to be sued in state court insufficient); Atascadero, 473 U.S. at 241 (general waiver of sovereign immunity insufficient). Third, appellants subsequently conceded in their pleadings that DTOP was an "arm of the state" for purposes of Eleventh Amendment immunity.

waiver of immunity, that conduct must be "unambiguous" and "must evince a clear choice to submit [the state's] rights for adjudication by the federal courts." Maysonet-Robles, 323 F.3d at 52. Filing a motion to dismiss that specifically asserts Eleventh Amendment immunity is hardly such an act. E.g., Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 618-20 (2002) (removing state action to federal court); Gardner v. New Jersey, 329 U.S. 565, 574 (1947) (filing a proof of claim in a bankruptcy proceeding); Paul N. Howard Co. v. P.R. Aqueduct & Sewer Auth., 744 F.2d 880, 886 (1st Cir. 1984) (filing a counterclaim and third-party complaint in federal court).

Accordingly, we conclude that the Commonwealth and DTOP did not waive their immunity by filing a motion to dismiss. The dismissal of the federal claims against the Commonwealth and DTOP is therefore affirmed.

### C. Substantive Due Process Claims

Plaintiffs' remaining section 1983 claims against the Municipality, PRASA, Ondeo, and PRHA (collectively, "Governmental Defendants") rest on an alleged violation of Antonio Luis's substantive due process rights. The Due Process Clause of the Fourteenth Amendment forbids a state from depriving a person of life, liberty, or property without due process of law. Notwithstanding its plain language, the Due Process Clause "guarantees more than fair process," Washington v. Glucksberg, 521 U.S. 702, 719 (1997), and "cover[s] a substantive sphere as well,

-8-

barring certain government actions regardless of the fairness of the procedures used to implement them." County of Sacramento v. Lewis, 523 U.S. 833, 840 (1998) (citation and internal quotation marks omitted).

The right to substantive due process is, however, confined within relatively narrow limits. The Supreme Court has emphasized that the Due Process Clause does not guarantee minimum levels of safety or security. See, e.g., Collins v. City of Harker Heights, 503 U.S. 115, 126-27 (1992).[6] It has likewise observed repeatedly that the Due Process Clause is not a substitute for traditional tort remedies. See, e.g., Daniels v. Williams, 474 U.S. 327, 332 (1986) ("Our constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society."); Paul v. Davis, 424 U.S. 693, 701 (1976) (rejecting reasoning that the Fourteenth Amendment is "a font of tort law to be superimposed upon whatever systems may already be administered by the States"); see also Frances-Colón v. Ramirez, 107 F.3d 62,

---

[6] See also DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 194-97 (1989) (holding that a state's failure to protect an individual against private violence generally does not constitute a violation of the Due Process Clause, because the Clause imposes no duty on the state to provide members of the general public with adequate protective services); Soto v. Flores, 103 F.3d 1056, 1064 (1st Cir. 1997) (where the harm is caused by a third party, "courts must be careful to distinguish between conventional torts and constitutional violations").

63-64 (1st Cir. 1997) (rejecting plaintiff's attempt to clothe a medical malpractice claim in civil rights language).

Plaintiffs' claim of substantive due process here is based on the contention that the Governmental Defendants failed to devote sufficient resources to the design and maintenance of their sewer and highway systems, resulting in flooding and the failure to cover an open manhole.[7] They did so, plaintiffs contend, despite knowing of the open manhole and of the tragic consequences that could arise if the opening became obscured by floodwaters. Plaintiffs thus challenge the executive actions of state and local officials. Under such circumstances, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Lewis, 523 U.S. at 848 n.8.

The "shock the conscience" standard is somewhat amorphous, but determining its boundaries is not an arbitrary exercise. See id. at 847. The Supreme Court has stated that negligently inflicted harm is "categorically beneath the threshold" of a constitutional violation. Id. at 849. In contrast, behavior "at the other end of the culpability spectrum" – that is, behavior "intended to injure in some way unjustifiable by any government

---

[7] Plaintiffs allege an array of misconduct and omissions including, among other things, failure to construct and maintain the sewer facilities to prevent flooding; failure to maintain the highway and adjacent lands to prevent flooding; failure to supervise the area around the manhole; improper use of a drainage pump; and failure to inspect and repair the open manhole.

-10-

interest" – is the sort of official action most likely to "shock the conscience." Id.

Nothing in plaintiffs' complaint indicates that the defendants actually intended to harm Antonio Luis. Rather, the complaint alleges at most that the defendants were deliberately indifferent to his safety. According to the Supreme Court, culpability in this "middle range . . . is a matter for closer calls." Id. And this court has previously noted that "[i]n situations where actors have an opportunity to reflect and make reasoned and rational decisions, deliberately indifferent behavior may suffice to shock the conscience." Rivera v. Rhode Island, 402 F.3d 27, 36 (1st Cir. 2005) (emphasis added; internal quotation marks omitted). That determination, however, is context-specific. Although plaintiffs suggest otherwise, "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another." Lewis, 523 U.S. at 850.

The Supreme Court's decision in Collins guides our analysis here. In that case, a sanitation department worker died of asphyxiation from sewer gas while working in a manhole. His widow alleged that the city was deliberately indifferent to her husband's safety; specifically, she contended that the city knew of the specific dangers posed by the sewer gas, but failed to provide training, warnings, or proper equipment to deal with the threat. 503 U.S. at 117-18. The Court declined to characterize those "deliberately indifferent" omissions as "conscience-shocking."

-11-

Instead, it described the plaintiff's complaint as "analogous to a fairly typical state-law tort claim:  The city breached its duty of care to [the decedent] by failing to provide a safe work environment."  Id. at 128.

We find this claim, like the claim advanced in Collins, to be analogous to a typical state tort claim, and accordingly insufficient to state a substantive due process violation.  See Frances-Colón, 107 F.3d at 64 ("A proximate causal link between a government agent's actions and a personal injury does not, in itself, bring a case out of the realm of tort law and into the domain of constitutional due process.").

As was the case in Collins, our unwillingness to characterize the Governmental Defendants' alleged omission as "conscience-shocking" "rests on the presumption that the administration of government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces."  503 U.S. at 128.  Creating and maintaining public works such as sewers, roads, and sidewalks "involve a host of policy choices."  Id. at 129.  Local governments must decide the appropriate level of resources, which are necessarily limited, to devote to those works.  Even where the government is aware of specific dangers, such as open manholes, it must perform a triage among competing demands — a triage that is occasionally performed in times of emergency, such as heavy rains

-12-

and flooding.  Government actors must also determine, as a policy matter, how to make these decisions and what resources to devote to assessing the various competing needs.  Such questions are best answered by locally elected representatives and their appointees "rather than by federal judges interpreting the basic charter of Government for the entire country."  Id.[8]

We emphasize that the danger at issue in this case was a danger to the general public — not a danger that was in any meaningful sense specific to Antonio Luis.  Cf., e.g., Kallstrom v. City of Columbus, 136 F.3d 1055, 1066 (6th Cir. 1998) (state's actions must "place the victim specifically at risk, as distinguished from a risk that affects the public at large"); Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir. 1995) (plaintiff must be a "member of a limited and specifically definable group").  In such a context, even a conscious decision not to cover a manhole may be unwise or unreasonable, but it does not "shock the conscience" as that term is defined under the law.  See White v. Lemacks, 183 F.3d 1253, 1258 (11th Cir. 1999) ("[W]hen someone not in custody is harmed because too few resources were devoted to their safety and protection, that harm will seldom, if ever, be

---

[8] Moreover, each policy option will inevitably carry its own risks — risks that will, in many cases, be well-known to the policy-makers.  Yet a "substantive due process violation does not arise whenever the government's choice prompts a known risk to come to pass."  Schroder v. City of Fort Thomas, 412 F.3d 724, 729 (6th Cir. 2005).

cognizable under the Due Process Clause."). State law may require due care on the part of state officials; the United States Constitution does not. Lewis, 523 U.S. at 849.

We also emphasize that the situation at bar is "quite different" from that in which an individual is in state custody prior to his injury, and is therefore owed a specific duty of care by the state. See Collins, 503 U.S. at 127; DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989). "[W]hen the state by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself," the state may incur an "affirmative duty to protect" the individual. DeShaney, 489 U.S. at 200 (emphasis added). Here, however, plaintiffs can point to no affirmative act by the state that deprived Antonio Luis of his liberty.[9]

Finally, plaintiffs assert that because Puerto Rico maintained the sewer systems, it specifically undertook the duty to guarantee the safety of its citizens in this context. Collins all but forecloses such a conclusion. The Court there found that the city had no duty to provide its employees with a safe working

_____

[9] To the extent plaintiffs attempt to ground liability in the so-called "state-created danger" theory, the absence of an affirmative act by the state in creating the danger is fatal to the claim. See Rivera, 402 F.3d at 37. The only affirmative acts reasonably inferred from the complaint are that the state built and maintained the roadways and sewer systems. These acts are simply too attenuated from the danger at issue to meet the requirements of this particular due process theory. See id.; Searles v. Se. Penn. Transp. Auth., 990 F.2d 789, 793 (3d Cir. 1993).

environment, and indicated that a claim by a pedestrian "who inadvertently stepped into an open manhole . . . should be analyzed in a similar manner."  Collins, 503 U.S. at 119; see also Lewellen v. Metro. Gov't of Nashville & Davidson County, Tenn., 34 F.3d 345, 350 n.4 (6th Cir. 1994) (interpreting Collins as "indicating that persons not employed by the government are . . . precluded from recovering under § 1983 for injuries caused by the government's 'deliberate indifference' to a known risk" where the individual is not in state custody); Searles, 990 F.2d at 792 (applying Collins to conclude that the state transportation agency had no duty to provide the public with a safe passenger environment on its trains).[10]

In summary, the complaint fails to state a claim under section 1983 for violation of substantive due process.  The actions of the Governmental Defendants in failing to prevent the hazard of an open manhole cover, even if true, do not "shock the conscience" within the meaning of the law.

---

[10] Plaintiffs here attempt to distinguish Collins on the ground that the decedent in that case voluntarily accepted "an offer of employment."  503 U.S. at 128.  In contrast, plaintiffs contend Antonio Luis was a minor and therefore unable to take voluntary actions.  That distinction in this context is immaterial; it can hardly be said that the plaintiff in Collins knew the danger he faced and voluntarily entered the manhole nonetheless.  Indeed, it was precisely the alleged lack of knowledge that gave rise to the claim.

-15-

## III.  CONCLUSION

Without question, the death of Antonio Luis Ruiz Ramos was a horrific tragedy.  Nonetheless, we are required to separate our natural, and powerful, sympathy for the decedent's family from our duty to apply the law.  Under that standard, the case is not a particularly close one.  The Eleventh Amendment bars the action as to the Commonwealth and DTOP.  As to the Governmental Defendants, the complaint does not allege a violation of substantive due process, and therefore fails to state a claim under section 1983 upon which relief can be granted.

Two issues remain.  First, having properly dismissed the federal claims, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state-law claims asserted in this case.  See 28 U.S.C. § 1367(c)(3); see also Martinez v. Colon, 54 F.3d 980, 990-91 (1st Cir. 1995).  Second, because we affirm the decision of the district court on the merits, we find no abuse of discretion in its refusal to grant plaintiffs' motion for reconsideration.

**Affirmed**.