Maria MONTALVO–PADILLA,
et al., Plaintiffs

v.

UNIVERSITY OF P.R.,
et al., Defendants.

Civil No. 04–2239(SEC).

United States District Court,
D. Puerto Rico.

March 29, 2007.

Enrique M. Almeida–Bernal, Almeida Law Office, San Juan, PR, Zelma B. Davila–Carrasquillo, Almeida & Davila, P.S.C., San Juan, PR, for Plaintiffs.

Roberto A. Fernandez–Quiles, Gonzalez Castaner & Morales Cordero Law Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, Senior District Judge.

Pending before the Court are two motions to dismiss (Dockets ## 50, 76) and a motion for summary judgment (Dockets ## 81, 86–87) filed by Defendants. Plaintiff[1] has opposed the motions to dismiss (see Docket # 60 for opposition to Docket # 50 and Docket # 103 for opposition to Docket # 76). As for the motion for summary judgment, Plaintiff objects to it on two grounds: (1) that the evidence submitted in support of Defendants' Statement of Facts has not been translated into the English language by a certified translator, as required by the District's Local rules and (2) that Defendants have yet to submit certain pending discovery (see Docket # 110).

Per Plaintiff's objection due to lack of proper translation of the supporting evidence, we will **STRIKE** Defendants' Motion for Summary Judgment (Docket # 86). The fact that we will not entertain the motion for summary judgment does not prevent us, however, from ruling on the Motions to Dismiss (Dockets ## 50,

---

1. Although there are several Plaintiffs in this case—Ms. María Montalvo–Padilla and her children—because Montalvo–Padilla is the main plaintiff in this action, and for ease of reference, we have referred to Montalvo–Padilla throughout this opinion as if she were the sole plaintiff. Naturally, our holdings here apply to all Plaintiffs.

76). These motions, which we address jointly, will be **GRANTED in part, DENIED in part.**

### Procedural and Factual Background

Because we are addressing motions to dismiss, we take all well pleaded facts asserted in the Second Amended Complaint (Docket # 40) as true. In 1973, Plaintiff began working as a counselor for the University of Puerto Rico (hereinafter U.P.R.) at its Cayey campus. In 1983, Plaintiff was designated Director of the Guidance and Counseling Office. That office was renamed Centro Interdisciplinario de Desarrollo Estudiantil (hereinafter CEDE, per its Spanish acronym) in 2001. As director of CEDE, Plaintiff supervised five employees and received an $800.00 monthly bonus, in addition to her regular salary and fringe benefits.

In 2004, Plaintiff began experimenting problems at work. Plaintiff alleges that in a meeting held on April 26, 2004 with Co-defendant Aragunde, then Chancellor of the Cayey Campus of the U.P.R., and the personnel of CEDE, Co-defendant Aragunde intimidated and humiliated her in front of her supervisees. Specifically, Plaintiff avers that Co-defendant Aragunde told her that things had to be run according to his wishes, and not in the way she had been doing them for a long time. Plaintiff further alleges that he threatened to select someone else to take her position as director of CEDE because she had been there a long time and resisted change, and he needed a new vision. Plaintiff also asserts that, as the meeting progressed, Co-defendant Fernández—until then a supervisee of Plaintiff—laughed and later mocked her. As a result of such meeting, Plaintiff felt ill and sought treatment.

After the meeting, the campaign to substitute Plaintiff as director of CEDE took on full force. Co-defendant Aragunde asked Dean of Students Efraín Colón, who was younger than Plaintiff, to take on the responsibilities of Plaintiff as director of CEDE. Mr. Colón did not acquiesce and resigned as Dean of Students, allegedly because he did not want to be a part of the persecution against Plaintiff. Co-defendant Lizandra Torres substituted Colón as Dean of Students. Plaintiff avers that Co-defendant Torres, after being named Dean of Students, harassed her by telling her that she had been at CEDE a long time, her ideas were archaic, and that she should understand Co-defendant Aragunde's desires. Co-defendant Torres also told the President of the Student Body Council that Plaintiff's gray hair impeded her from directing CEDE. Furthermore, Plaintiff alleges that Co-defendant Torres, in reference to an EEOC charge that Plaintiff had filed, expressed that if Plaintiff ultimately did not prevail on such charge, "they" (in apparent reference to the administration) were going to adopt a no holds barred attitude.[2]

On August 12, 2004, without prior warning, Co-defendant Torres informed Plaintiff that she would no longer be in charge of her subordinates. By August 18, 2004, Plaintiff's responsibilities had been reduced and her supervisory duties eliminated. Then, on September 10, 2004, Co-defendant Aragunde dismissed Plaintiff from her position as Director of CEDE. Plaintiff avers that this was for discriminatory reasons and without just cause. Co-defendant Arargunde substituted Plaintiff with Co-defendant Torres, who is some fifteen years younger than Plaintiff and allegedly unqualified for the post. Plaintiff was kept on as counselor and placed under the supervision of Co-defendant Torres. Plaintiff continued to be subjected to harassment and, on December 31,

2. Co-defendant Torres' words, in Spanish, are alleged to have been "hacer fiesta contigo".

2004, she retired, which she equates to a constructive discharge.

This action ensued.

## Standard of Review

### Fed.R.Civ.P. 12(b)(1)

■ Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move the Court to dismiss a complaint for lack of subject matter jurisdiction. A motion under this rule may be used to assert that a complaint is barred by the defendant state's sovereign immunity. *See* 5B Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure*, § 1350 (2004); *Murphy v. U.S.*, 45 F.3d 520 (1st Cir.1995) (analyzing under R. 12(b)(1) the United States' motion to dismiss the complaint as barred by its sovereign immunity); *Smith v. Washington Metropolitan Area Transit Authority*, 290 F.3d 201, 205 (4th Cir.2002) ("an assertion of governmental immunity is properly addressed under the provisions of Rule 12(b)(1)") (citations omitted). In ruling on such a motion, the Court may consider materials outside the pleadings in order to aid its determination regarding jurisdiction. *González v. U.S.*, 284 F.3d 281, 288 (1st Cir.2002).

### Fed.R.Civ.P. 12(b)(6) & 12(c)

Under Rule 12(b)(6) in assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 119 S.Ct. 1661, 1676, 143 L.Ed.2d 839 (1999).

But "[a]lthough this standard is diaphanous, it is not a virtual mirage." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir.1997) *citing Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Id.* In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle*, 142 F.3d at 508 (*quoting Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)). *See also Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999). Courts, moreover, "will not accept a complainant's unsupported conclusions or interpretations of law." *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 971 (1st Cir.1993). "[I]t is enough for a plaintiff to sketch an actionable claim by means of a generalized statement of facts from which the defendant will be able to frame a responsive pleading." *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 73 (1st Cir.2000) (*quoting Garita Hotel Ltd. Partnership v. Ponce Fed. Bank*, 958 F.2d 15, 17 (1st Cir.1992) (internal quotation. marks omitted)). In so doing, "a plaintiff can make allegations *either* on the basis of personal knowledge or on 'information and belief.'" *Id.*

Additionally, when the defendant files a motion to dismiss under R. 12(b)(6) after

having answered the complaint, the motion is treated as one for judgment on the pleadings. *See,* Fed.R.Civ.P. 12(c) ("After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings"); *Aponte–Torres v. Univ. of P.R.,* 445 F.3d 50, 54 (1st Cir.2006) ("Because the defendants previously had answered the amended complaint, the district court appropriately treated their motion to dismiss as one for judgment on the pleadings."). As the standard for motions under R. 12(b)(6) and 12(c) is essentially the same, the fact that a motion to dismiss is treated as one for judgment on the pleadings is usually devoid of practical consequences. *See, Id.* at 54–55 (stating that 12(b)(6) motions and 12(c) motions are "ordinarily accorded much the same treatment" and that the "modest difference" between the motions is that "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole") (citations omitted).

## Applicable Law and Analysis

Defendants argue in their motions (Dockets ## 50 and 103) that the Second Amended Complaint should be dismissed because: (1) Plaintiff failed to exhaust administrative remedies, thereby precluding her from asserting her claims under the Age Discrimination in Employment Act (ADEA); (2) Plaintiffs failed to plead a procedural or substantive Due Process claim; (3) Plaintiffs failed to plead an equal protection claim; (4) the U.P.R. is entitled to Eleventh Amendment Immunity; (4) any federal constitutional claim must fail because the U.P.R. is not a person for the purposes of 42 U.S.C. § 1983, and the individual defendants are entitled to qualified immunity; (5) the individual defendants are not subject to liability under the ADEA, and (6) the Puerto Rico

statutes invoked do not apply to Defendants.

We begin by clarifying what claims were properly pled in the Second Amended Complaint. Once we dispose of that matter, we will turn to the remaining federal claims and the arguments for dismissal thereof. Last, but not least, we will address the claim under Puerto Rico's Act 100, 29 P.R. Laws Ann. § 146 *et seq.*

### I. Failure to plead

Plaintiff included five causes of action in her Second Amended Complaint (Docket # 40): for age discrimination and unlawful demotion, retaliation, defamation, intentional infliction of emotional distress, and constructive discharge. Plaintiff's factual allegations as to the events leading up to the complaint were divided among those five causes of action. Additionally, the first paragraph of Plaintiff's complaint cites, as bases for this Court's jurisdiction, the following: (1) the ADEA, 29 U.S.C. § 621, *et seq.,* (2) "violations to equal protection and due process clauses of the United States Constitution, 42 U.S.C. § 1983", (3) Title IX, 20 U.S.C. § 1681, and (4) the Age Discrimination Act of 1975, 42 U.S.C. § 6102. Supplemental jurisdiction was also invoked to entertain the Puerto Rico law claims.

To the Court's bemusement, one of the most hotly contested issues in this case so far has been whether Plaintiff adequately pled causes of action for sex discrimination under Title VII and Title IX, and for constitutional violations cognizable under § 1983. We refuse to expend as much ink and paper as the parties have on this issue.

A detailed examination of the Second Amended Complaint leaves no doubt that no claim for sex discrimination, whether under Title VII or Title IX, was included therein. The allegations in the complaint, when they identify a reason for Defen-

dants' actions, are consistent in that "age" was the motivating factor. *See,* Docket # 40, ¶¶ 28, 40, 44 (all stating that Defendants' discrimination or actions were because of or based on Plaintiff's age); ¶¶ 22, 25, 26, 29, 31, 32, 34 (emphasizing "facts" or alleged statements by Defendants that deal with Plaintiff's long tenure as director of CEDE and its predecessor, characteristics of Plaintiff commonly associated with age-such as gray hair—, or the age discrepancy between Plaintiff and her younger supervisees, supervisors, or colleagues). No single allegation is made that Defendant's adverse actions against Plaintiff were motivated because of her sex. Merely alleging that the Plaintiff is a woman is plainly insufficient to establish a claim under either Title VII or Title IX. As such, we conclude that Plaintiff failed to plead any cause of action for discrimination based on sex, in violation of either Title VII or Title IX.

Whether Plaintiff adequately pled any cause of action for violations of her federal constitutional rights presents a slightly closer question. In general, to sketch an actionable § 1983 claim, Plaintiff must allege that an act or omission was undertaken under color of state law, and that she was deprived of some federally secured right. *Aponte–Torres,* 445 F.3d at 55 (citations omitted). Following the lead of *Aponte–Torres,* we deem the first element appropriately pled, because the Second Amended Complaint alleges actions attributed to the U.P.R. and its functionaries and the U.P.R. is an arm of the Commonwealth. *Id.* Thus, Plaintiff pled the necessary state action. In order to determine whether Plaintiff pled the second element, the deprivation of a federally secured right, we must analyze each possible theory of constitutional violation separately. Plaintiff does not defend her equal protection claim as against Defendants' argument that it was not adequate-

ly pled. Accordingly, and finding the Second Amended Complaint devoid of allegations sufficient to support such a claim, we treat this matter as definitively disposed of and turn instead to the due process claims.

■ As for the procedural due process claim, it too fails even under the liberal pleading standard. "To establish a procedural due process violation, a plaintiff must identify a protected liberty or property interest, [...] and allege that the defendants, acting under color of state law, deprived them of that interest without constitutionally adequate process". *Aponte–Torres,* 445 F.3d at 56. Plaintiff has not alleged a protected property interest, and, thus, has not pled an essential element of her due process claim. Contrary to Plaintiff's assertion, merely alleging that she held the position of counselor does not implicitly establish a protected property interest over her employment. Plaintiff had to actually aver, at the very least, that her position was a career position. Nor does this end the problem: to the extent that Plaintiff's unpled procedural due process argument refers to Defendants' actions of demoting Plaintiff from her position of Director of CEDE back to her original counselor position, she had to plead a proprietary interest over the position of Director, and not merely that of counselor.

■ As for Plaintiff's substantive due process claim, the pleadings are even more scarce with regards to such a claim. "The right to substantive due process is ... confined within relatively narrow limits." *Ramos–Piñero v. Puerto Rico,* 453 F.3d 48, 52 (1st Cir.2006). Insofar as Plaintiff pretends to ground her substantive due process claim on allegations concerning her employment, she has stepped outside the confines of the clause. These allega-

tions could have been, but were not, fodder for a procedural due process claim. As we have seen, however, no such claim was properly pled. To the extent that Plaintiff seeks to find pleadings sufficient to sustain a substantive due process claim in her allegations concerning her reputation and dignity, she has once again strayed from the mark. *See, Id.* at 53 (citing *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) for its rejection of the "reasoning that the Fourteenth Amendment is a 'font of tort law to be superimposed upon whatever systems may already be administered by the States' "). The injuries to such characteristics may be properly asserted through state tort law.

To recap: upon examination of the complaint, we find that Plaintiff failed to allege any claim for sex discrimination, under either Title VII or Title IX, or any claim cognizable via 42 U.S.C. § 1983.

## II. ADEA

### A. Individual liability

■ Defendants argue that the ADEA claims against the individual defendants should be dismissed because they are not employers within the meaning of that statute. Plaintiff disagrees. The prevailing view in this District is that the ADEA does not provide for individual liability of the supervisors. *See, Mejías Miranda v. BBII Acquisition Corp.*, 120 F.Supp.2d 157, 171 (D.P.R.2000) (citing cases from this District in which the Court has dismissed ADEA, Title VII, and/or ADA claims against individuals); *Rodríguez v. P.R. Marine Mgmt., Inc.*, 975 F.Supp. 115, 120 (D.P.R.1997) (stating that "the weight of authority suggests that the textual inclusion of the phrase 'agent of such a person' was merely intended to create respondeat superior liability against employers for the acts of their agents, not upon the agents individually"). The under-

signed has previously adhered to that view, *see, e.g., Correa–Ruiz v. Calderón–Serra*, 411 F.Supp.2d 41, 47 (D.P.R.2005), *Vicenty–Martell v. Estado Libre Asociado*, 48 F.Supp.2d 81, 87 (D.P.R.1999), and Plaintiff has made no argument, nor cited any case law that either require or persuade us to take a different approach on this issue. Accordingly, the ADEA claims against the individual co-defendants will be **DISMISSED WITH PREJUDICE.**

### B. Exhaustion of remedies

■ Defendants argue that all claims under the ADEA should be dismissed because Plaintiff failed to exhaust administrative remedies. To that end, Defendant posits that although Plaintiff filed a charge with the EEOC, the adverse employment actions for which she claims relief—retaliation, constructive discharge, and harassment—took place *after* she filed such charge. Thus, Defendants conclude that Plaintiff's charge could not possibly exhaust administrative remedies as to those actions. We need not tarry on this point. As Plaintiff correctly points out, her claim that Defendants retaliated against her for filing her charge survives even if she did not later file a separate charge with the EEOC. *See, Clockedile v. New Hampshire Dep't of Corr.*, 245 F.3d 1, 6 (1st Cir.2001) ("On balance, we think the cleanest rule is this: retaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency -*e.g.*, the retaliation is for filing the agency complaint itself"). Thus, the retaliation claim, which encompasses the Defendants' actions of "demoting her, reducing her salary, retirement benefits, and acting with great hostility towards plaintiff", *see*, Docket # 40 ¶ 48, is not barred. As for the constructive discharge claim, although perhaps it would have been clearer for Plaintiff to

include the allegations concerning this event within her second cause of action, for retaliation, the fact remains that Plaintiff averred that she was constructively discharged due to the reprisals by Defendants. *See, Id.* at ¶ 62. We deem this sufficient as a pleading of constructive discharge in retaliation for Plaintiff's protected conduct.

To say more would be superfluous. Defendants' motion to dismiss predicated on exhaustion of remedies is **DENIED.**

### C. Eleventh Amendment

Defendants assert that all claims for monetary relief against the U.P.R. should be dismissed as barred by the Eleventh Amendment. This seemingly uncontroversial proposition has turned into a veritable battleground. Plaintiff argues that the U.P.R. is not entitled to partake of the Commonwealth's Eleventh Amendment immunity because the U.P.R., and not the Commonwealth, would ultimately pay any judgment in this case. Additionally, Plaintiff argues that this issue may not be resolved via a motion to dismiss and is instead suitable for summary judgment, as the Commonwealth's support of the U.P.R. is an issue to be explored via discovery.[3] In the alternative, Plaintiff argues that several exceptions to the Eleventh Amendment apply.

█ The Eleventh Amendment holds states immune from lawsuits filed by citizens of its own state, other states, or foreign citizens. *See,* U.S.C.A. Const. Amend. XI; *Kimel v. Florida Board of Regents,* 528 U.S. 62, 72–73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) ("the Constitution does not provide for federal jurisdiction over suits against nonconsenting States"). The Commonwealth of Puerto Rico, along with the fifty states of the Union, is shielded by the Eleventh Amendment. *See,* among others, *Maysonet–Robles v. Cabrero,* 323 F.3d at 48 n. 3, *Jusino Mercado v. Commonwealth of Puerto Rico,* 214 F.3d 34, 39 (1st Cir.2000), *Ortiz–Feliciano v. Toledo–Dávila,* 175 F.3rd 37, 39 (1st Cir. 1999). It is settled law that the protection afforded by the Amendment extends not only to the states themselves, but also to their instrumentalities and government officials acting in that capacity. *See, Maysonet–Robles v. Cabrero,* 323 F.3d 43, 48–49 (1st Cir.2003), *Wojcik v. Mass. State Lottery Comm'n,* 300 F.3d 92, 99 (1st Cir. 2002).

█ The First Circuit and this District have consistently held that the U.P.R. is an instrumentality of the state for Eleventh Amendment purposes and, as such, is not amenable to suit in federal court. *See, Toledo v. Sánchez,* 454 F.3d 24, 31 n. 1 (1st Cir.2006) (citing *Pinto v. Univ. of P.R.,* 895 F.2d 18, 18 (1st Cir.1990) for the proposition that "[t]he University of Puerto Rico is considered an arm of the state within the purview of the Eleventh Amendment"); *Aponte–Torres v. Univ. of P.R.,* 445 F.3d

---

**3.** To the extent that Plaintiff wishes to make out an argument under *Fresenius Medical Care Cardiovascular Res., Inc. v. Puerto Rico and the Caribbean Cardiovascular Ctr. Corp.,* 322 F.3d 56 (1st Cir.2003), which she does not even cite, she fails to recognize that under the relevant test established by that case, the Court need turn to the issue of whether the state will pay any judgment issued only if, after analyzing the first part of the test, the Court cannot conclude that the entity has been structured to share the state's sovereign immunity. In turn, analysis of that first prong depends on a series of factors which are viewed in light of state law. *See, Id.* at 56–72; *Pastrana–Torres v. Corporación de Puerto Rico para la Difusión Pública,* 460 F.3d 124, 126–128 (1st Cir.2006). Plaintiff has not addressed the factors set out in the first part of the *Fresenius* test, and, as explained, we need not turn to the issue of who will pay until after evaluating the structure of the entity.

50, 55 (1st Cir.2006) ("the case law establishes that U.P.R. is an arm of the Commonwealth") (citing *Pinto,* *supra*); *Vizcarrondo v. Bd. of Tr. of the Univ. of P.R.*, 139 F.Supp.2d 198, 201–202 (D.P.R. 2001) (U.P.R. is an arm of the state; fact that it has power to sue and be sued does not strip it of Eleventh Amendment immunity); *Dogson v. Univ. of P.R.*, 26 F.Supp.2d 341, 343–344 (D.P.R.1998) (evaluating the U.P.R.'s claim to Eleventh Amendment immunity in light of the factors set forth in *Metcalf & Eddy v. P.R.A.S.A.*, 991 F.2d 935 (1st Cir.1993) and concluding that the "University remains an arm of the state").

Plaintiff has not even attempted to address this case law in her ill-fated effort to have the Court hold the U.P.R. amenable to this suit. Furthermore, although Plaintiff attempts to ground its opposition to the U.P.R.'s argument for Eleventh Amendment immunity in *Metcalf & Eddy v. P.R.A.S.A.*, 991 F.2d 935 (1st Cir.1993), we note that the case-law in this District has already addressed the U.P.R.'s continuing entitlement to Eleventh Amendment immunity after the decision rendered by the First Circuit in *Metcalf. See, Dogson, supra.* Furthermore, after *Metcalf* and *Fresenius*, 322 F.3d 56, the First Circuit has repeated, albeit in passing, that the U.P.R. is an arm of the Commonwealth and shares its sovereign immunity. *See, Toledo–Davila, supra,* and *Aponte–Torres, supra.* Having no reason to depart therefrom, we abide by the well-settled proposition that the U.P.R., as an arm of the state, is immune to suit in federal court.

■ The above notwithstanding, Plaintiff argues that the U.P.R.'s Eleventh Amendment immunity is abrogated with regards to claims under the Age Discrimination Act of 1975, 42 U.S.C. § 6101 *et al,*

which prohibits age-based discrimination on programs receiving federal financial assistance. *See,* 42 U.S.C. § 2000d–7 ("A State shall not be immune under the Eleventh Amendment ... from suit in Federal court for a violation of .... the Age Discrimination Act of 1975"). Whatever the merits of the Age Discrimination Act claim, and Plaintiff's further argument that the University is not entitled to Eleventh Amendment immunity as to such claim,[4] it does not change the law with regards to the continued viability of the Eleventh Amendment immunity to claims under the ADEA. *See, Kimel,* 528 U.S. 62, 120 S.Ct. 631.

Plaintiff further argues that the U.P.R. is not entitled to Eleventh Amendment immunity as to the sex discrimination claims. This argument is a non-starter. We previously determined that there is no hint of a well-pleaded sex discrimination claim in the Second Amended Complaint.

Finally, Plaintiff avers that the Eleventh Amendment poses no bar for attaining prospective equitable relief, i.e., reinstatement. We agree. *See, Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). As such, we will **DISMISS WITH PREJUDICE** Plaintiff's claims for monetary relief under the ADEA, but leave pending her claim for prospective equitable relief under the statute.

### III. The claim under Puerto Rico's Act 100

■ Defendants also request that the Court dismiss Plaintiff's claim under Act 100, 29 P.R. Laws Ann. § 146 *et seq* (hereinafter Act 100), because the U.P.R. is not an employer within the definition of that term in the statute. Act 100, Puerto Rico's general employment discrimination statute, defines "employer" as:

---

4. Defendants did not address this point on the motions to dismiss.

[A]ny natural or [juridical] person employing laborers, workers or employees, and the chief, official, manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent, or representative of such natural or artificial person. It shall include all such agencies or instrumentalities of the Government of Puerto Rico as may be operating as private businesses or enterprises.

29 P.R. Laws Ann. § 151. In *Rodríguez Cruz v. Padilla Ayala*, 125 DPR 486 (1990), 1990 WL 657488 (Official English translation), the Puerto Rico Supreme Court was faced with the task of determining whether the Municipality of Trujillo Alto, an entity separate and independent from the central government of the Commonwealth of Puerto Rico, was an employer subject to Act 100's proscriptions and penalties. After examining the legislative history of Act 100, the P.R. Supreme Court concluded that a municipality did not fit the bill of an employer for the purposes of that statute. The P.R. Supreme Court emphasized that the purpose of Act 100 "was to protect employees in the private sector from all types of discrimination" and that, "via exception, the protection covered all employees of government agencies or instrumentalities that operate as private businesses or companies." *Id.* at 508. The Court also noted that, although a proposal to extend the provisions of Act 100 to all government employees had been submitted, the Legislature had rejected it. *Id.* at 509, n. 17. As such, and taking into account the purpose for which municipalities were created, the state functions that they carry out, and its lack of for-profit operation, the P.R.

Supreme Court held that, absent a clear legislative expression to the contrary, Act 100 could not be construed as applying to municipalities. *Id.* at 510.

Upon examination of Act 100's definition of employer, and per the discussion in *Rodríguez Cruz, supra*, with regards to the purposes and scope of that statute, we conclude that the U.P.R. is not an employer within the meaning provided for that term in Act 100. The U.P.R. is not a public corporation, it does not operate as a for-profit business and, as a public service to the people of Puerto Rico, provides higher education thereto. *See, Dogson v. Univ. of P.R.*, 26 F.Supp.2d 341, 342 n. 1 (D.P.R. 1998). As such, it is not liable under Act 100.[5] *See, Id., Vidal–Valdivia v. Univ. of P.R.*, 2006 WL 1314372 (D.P.R.2006) (Slip Op.) (dismissing Act 100 claim against the U.P.R. because it is a non-profit government instrumentality and thus outside the scope of the statute) (citations omitted); *see also, Alsina–Martínez v. Univ. de P.R.*, 2005 WL 3312324 * 7 (P.R. Court of Appeals, 2005) (concluding that the U.P.R. is not an employer within the definition provided by Act 100); *Martínez Arzuaga v. Univ. de P.R.*, 2002 WL 31957777 *4 (P.R. Court of Appeals, 2002)(same).

Because the U.P.R. is not an employer as that term is used in Act 100, Plaintiff's claims under said statute will be **DISMISSED WITH PREJUDICE.** Although Plaintiff argues that the individual supervisors should be held liable regardless of the Court's determination as to the applicability of Act 100 to the U.P.R., we find that position untenable. Plaintiff cites *Rosario Toledo v. Distribuidora Kikuet*, 151 D.P.R. 634 (2000), in support of her contention

**5.** We note that this conclusion is consistent with our holding above that the U.P.R. is entitled to share the Commonwealth's Eleventh Amendment Immunity. In any event, the fact that the U.P.R. possesses such immunity would compel us to dismiss the Act 100 claim against it. *See, Dogson,* 26 F.Supp.2d at 344 (citing *Lipsett v. U.P.R.,* 864 F.2d 881, 885 (1st Cir.1988)).

that the Act 100 claim should remain pending as against the individual co-defendants. In that case, the P.R. Supreme Court held that individual supervisors who engage in sex discrimination are liable, along with the employer, under Act 100. Plaintiff seemingly forgets, however, that there was no issue in *Rosario* with regards to the applicability of Act 100 to the employer itself, i.e., Distribuidora Kikuet. The definition of employer in Act 100, cited above, clearly states that employers include "any natural or [juridical] person . . . and the chief, official, manager, officer, . . . agent or representative **of such natural or artificial person**". 29 P.R. Laws Ann. § 151 (emphasis added). Plaintiff cites no case nor makes any argument that a supervisor of an entity that is not an employer under Act 100 should nonetheless be held himself to be an employer under that same statute. Per the definition of employer within Act 100, we conclude that because the individual co-defendants are not officials, agents, or representatives [6] of an "employer" under Act 100, they also cannot be held responsible as employers under that statute. Accordingly, the Act 100 claim will be dismissed in its entirety, as to all Defendants in this action.

## IV. Other matters

Having taken care of the dispositive motions, we now turn to other, procedural, matters pending in this case. We refer to the motions at Dockets ## 107, 108, 112, 113, 115, and 116.

We begin by recognizing that, thus far, this case's procedural history has been marred by difficulties. Seemingly unending discovery disputes have been brought before the Court on several occasions (*see* Docket # 98 for an overview of such disputes) and their specter haunts us—the

parties and the Court—still (*see*, Dockets ## 107, 115–116, 119). The Court attempted, evidently with little success, to strike a balance between overzealous interference and non-intervention with discovery. We leave discovery to the attorneys and, normally, most cases proceed quietly on this front. More often than not, counsel's failure to complete discovery without requesting or provoking interference by the Court on the matter signals a failure by one or all attorneys in the case to comply with their obligations pursuant to the Federal Rules of Civil Procedure and the Local Rules: both their obligation to seasonably comply with (or object to) discovery requests and their obligation to discuss in good faith any discovery dispute and, if possible, resolve it amicably. That said, when the orderly adversarial pretrial process breaks down, it is up to the Court to correct the problem. The current lack of success in disentangling the tightly wound knot that these parties have made out of discovery disappoints the Court but does not lead it to despair.

To the extent that the motions filed by Plaintiff request additional time to oppose the summary judgment motion because of Defendants' alleged delay in providing discovery materials, these requests are moot. As Plaintiff requested, and in view of Defendants' non-compliance with the Local Rules, Defendants' motion for summary judgment was stricken from the record. Thus, the motions at Dockets ## 107 and 108 are **MOOT** and the motion at Docket # 116 has been **GRANTED**. Plaintiff's motion for the entry of Default Judgment (Docket # 115) as a sanction for Defendants' non-compliance with discovery is **DENIED**. Defendants have opposed such motion at Docket # 119 and have essentially stated that all discovery due was provid-

---

**6.** We have purposely chosen the three more ample terms; it goes without saying that our decision is not based on the label attached to

the individual co-defendants' positions, but rather on the fact that they work for the U.P.R., which is exempt from the statute.

ed to Plaintiff. Clearly, there is some inaccuracy at work here, and the Court will be in a better position to gage such inaccuracy at the **Pretrial and Settlement Conference,** which will take place on **May 29, 2007 at 4:00 P.M. in the undersigned's chambers.** A Proposed Pretrial Order is due by **April 17, 2007.** Counsel should carefully re-examine their positions regarding discovery prior to such conference; the Court will not take kindly to any party that incorrectly asserts either (1) that another has not provided timely sought discovery or (2) that it has provided all requested discovery.

As for Defendants Sealed Ex–Parte Motion (Docket # 113), it is stricken from the record. This renders moot the motion to file under seal (Docket # 112). Defendants may, if they wish such motion to be in the record, re-file it (they may again request leave to file under seal) and provide notice thereof to the opposing party.

**Conclusion**

The following claims will be **DISMISSED WITHOUT PREJUDICE:** claims for sex discrimination under either Title VII or Title IX, and Plaintiff's § 1983 claims. Additionally, the claims under the ADEA against the individual Co-defendants will be **DISMISSED WITH PREJUDICE,** as will be the claims for monetary relief against the U.P.R. under that same statute. Finally, the Act 100 claim will also be **DISMISSED WITH PREJUDICE.**

This leaves pending the following claims: (1) claims under the ADEA as against the U.P.R. and only for prospective equitable relief; (2) claims under the Age Discrimination Act of 1975; (3) defamation; and (4) intentional infliction of emotional distress.

**SO ORDERED.**